**FAIRCHILD, ARABATZIS & SMITH, INC. and Steven M. Arabatzis, Plaintiffs,**

v.

**Michael SACKHEIM, Bernard Prince and Commodity Futures Trading Commission, Defendants.**

**No. 78 Civ. 435.**

United States District Court, S. D. New York.

April 28, 1978.

David C. Buxbaum, P. C., New York City, for plaintiffs; David C. Buxbaum, P. C., George Karl Rosenstock, New York City, of counsel.

Richard E. Nathan, Deputy Gen. Counsel, Commodity Futures Trading Com'n, Richard A. Levie, Sp. Counsel, Washington, D. C., Leslie A. Blau, Sp. Counsel, New York City, David R. Merrill, Atty., Washington, D. C., for defendants.

LASKER, District Judge.

Plaintiffs sue the Commodity Futures Trading Commission ("Commission") and two of its agents for allegedly wrongful conduct in connection with the commencement and conduct of a Commission investigation. Fairchild, Arabatzis & Smith, Inc. ("FAS"), a registered futures commission merchant, and Steven A. Arabatzis ("Arabatzis"), FAS' president, claim that the Commission's current investigation of FAS was instituted to harass the plaintiffs, was motivated by a criminal design, and has been carried out in a manner that has abused and intimidated FAS' employees. It is claimed that the acts of the Commission and the two agents constitute violations of federal statutory law—the Commodity Exchange Act, 7 U.S.C. § 2 *et seq.* (Supp. IV, 1974) and 18 U.S.C. § 201—and common law torts. These acts are also said to have violated plaintiffs' rights under the First and Fifth Amendments to the United States Constitution. Plaintiffs seek damages and injunctive relief.[1]

Defendants move to dismiss, arguing that equitable relief may not be had because the plaintiffs have not exhausted their administrative remedies for their grievances; that plaintiffs cannot establish irreparable injury; that sovereign immunity prevents the issuance of an injunction against either the Commission[2] or its employees and that it

1. Plaintiffs' prayer for injunctive relief includes a request that "defendants' wrongful subpoenas be quashed, and defendants' wrongful demands for documents be set aside . . ." (¶ 43(8), Complaint). By ruling on the record (Transcript of March 7, 1978, at 3), that part of the complaint directed at the subpoenas was dismissed as not ripe.

2. Although the complaint against the Commission is dismissed on the simple ground that the Commission is immune from suit, *Blackmar v.*

also precludes monetary relief against the Commission. The defendants do not move to dismiss the claim for damages against the individual agents.

*Exhaustion*

 The rule prohibiting resort to the federal courts until available administrative remedies have been exhausted, *Myers v. Bethlehem Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938), has been variously applied either as a limit of the court's subject matter jurisdiction or as a constraint on the exercise of the court's equity power (reflecting equity's reluctance to intervene when the law provides an adequate remedy). *See McKart v. United States*, 395 U.S. 185, 193–94, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Aircraft & Diesel Corp. v. Hirsch*, 331 U.S. 752, 764, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947). The exhaustion requirement is most compelling when Congress has expressly announced that the jurisdiction of the administrative agency is exclusive or when there is a specific legislative command that resort to the courts may not be had unless and until a prescribed administrative procedure is followed. *See, e. g., Myers v. Bethlehem Corp., supra*, 303 U.S. at 48, 58 S.Ct. 459; *Aircraft & Diesel Corp. v. Hirsch, supra*, 331 U.S. at 765–66, 774–76, 780–81, 67 S.Ct. 1493. Where no explicit Congressional direction exists, adherence to the rule of exhaustion reflects well established principles of equity and judicial economy, as well as court deference to procedural frameworks erected by the legislative branch. That is, where Congress has built up a well defined administrative system for the resolution of a class of disputes (*see, e. g.,* the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.*; the Renegotiation Act of 1951, 50 U.S.C.App. § 1211 *et seq.*), courts are reluctant either to interrupt or anticipate agency determinations because such bypasses seriously impair expeditious resolution and result in the forfeiture of administrative expertise.

Furthermore, circumvention of prescribed procedures precludes the agency from building a factual record, ripening or narrowing a dispute, or resolving a controversy altogether, without the necessity of any judicial proceeding. *See, McKart v. United States, supra*, 395 U.S. at 193–94, 89 S.Ct. 1657; *Renegotiation Board v. Bannercroft & Co.*, 415 U.S. 1, 20–22, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974); *Aircraft & Diesel Corp. v. Hirsch, supra*, 331 U.S. at 767–68, 67 S.Ct. 1493.

 Whether imposed by express Congressional command or by principles of equity and court governance, the exhaustion doctrine "is . . . subject to numerous exceptions." *McKart v. United States, supra*, 358 U.S. at 193, 89 S.Ct. 1657 (footnote omitted). Judicial intervention, without exhaustion, has been upheld where contested agency action, normally reviewable within the administrative stream, was "clearly in excess of delegated powers" and contrary either to "a specific prohibition in the agency's [enabling] Act," *Leedom v. Kyne*, 358 U.S. 184, 189, 79 S.Ct. 180, 184, 3 L.Ed.2d 210 (1958), or some other federal statutory or constitutional right. *See, McCulloh v. Sociedad Nacional*, 372 U.S. 10, 16–17, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963); and *see, Aircraft & Diesel Corp. v. Hirsch, supra*, 331 U.S. at 773, 67 S.Ct. 1493. Circumvention of prescribed administrative procedures has also been permitted when administrative procedures will foreclose judicial review, *Skinner & Eddy Corp. v. United States*, 249 U.S. 557, 562, 39 S.Ct. 375, 63 L.Ed. 772 (1919); *Jewel Companies, Inc. v. Federal Trade Commission*, 432 F.2d 1155, 1158–59 (7th Cir. 1970), or when there has been a sufficient showing that they are inadequate. *See, Aircraft & Diesel Corp. v. Hirsch, supra*, 331 U.S. at 773, 67 S.Ct. 1493.

With these principles of exhaustion in mind we find that the doctrine does not apply to the circumstances of this case. Moreover, even if there existed in this case

*Guerre*, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952); *Economou v. United States Department of Agriculture*, 535 F.2d 688 (2d Cir. 1976), *cert. granted*, 429 U.S. 1089, 97 S.Ct.

1097, 51 L.Ed.2d 534 (1977) (see discussion *infra*, at 1186), the following analysis is required in order to determine the sufficiency of the complaint against the individual agents.

an administrative procedure that ought, ordinarily, to be followed in advance of resort to the court, it would nevertheless be inappropriate to dismiss this suit. The allegations of the complaint make this one of those exceptional cases that should be heard by the court even if a system of administrative adjudication existed.

■ The Commodity Exchange Act, 7 U.S.C. § 2 *et seq.* contains no explicit subject matter jurisdictional limitation. That is, except under circumstances irrelevant to the instant situation (discussed below), there is no requirement that questions arising under the Act be determined exclusively or initially by the Commission or any other agency. Accordingly, if the doctrine of exhaustion were to be applicable, it would be because the Act established an administrative framework for the expeditious and expert resolution of disputes. However, the Act contains no detailed provisions for the treatment of disputes such as the one at hand. In the absence of any well-defined administrative remedy, judicial abstention serves no purpose: nothing counsels against the exercise of the court's equity jurisdiction, whereas the seriousness of the allegations in the complaint positively argues for its exercise.

■ To be sure, the Act does provide for agency adjudication of certain types of case (with eventual review by the Court of Appeals), 7 U.S.C. § 9, but that remedy is available to the Commission, not to the plaintiffs. Were the Commission to file an administrative complaint asking for plaintiffs' suspension, the charges that are here levelled by the plaintiffs might be aired in the administrative proceeding, but they would probably not be within its scope, even as a defense. In any event, no administrative proceeding has been commenced, and none may ever be. The possibility that such a proceeding might be started in the future cannot be raised as a bar to the action here: certainly, the plaintiffs may not be denied a forum for their constitutional and statutory complaints until such

time as the Commission seeks to take administrative action. Any other ruling might, taking plaintiffs' allegations as true, subject the plaintiffs to illegal harassment indefinitely.

■ Looking beyond the Commodity Exchange Act, which, as indicated above, provides no remedy for the plaintiffs, the defendants argue that FAS and Arabatzis should be barred from this court because they have not availed themselves of the administrative remedy created by the Administrative Procedure Act, 5 U.S.C. § 555(b). In pertinent part, that section provides:

"So far as the orderly conduct of public business permits, an interested person may appear before an agency or its responsible employees for the presentation, adjustment, or determination of an issue, request, or controversy in a proceeding, whether interlocutory, summary, or otherwise, or in connection with an agency function. With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."

The absence of detail concerning the procedure to be followed by aggrieved persons (in appearing before the agency) or by the agency (in responding to grievances) leaves substantial doubt whether § 555(b) constitutes an administrative remedy that must be followed before resort to the courts. We find no need to determine the question because the complaint alleges, and is his affidavit—uncontested on this point—Arabatzis swears, that "responsible employees" of the Commission *were* presented with plaintiffs' complaints about abusive conduct. Nowhere does it appear that the Commission has "conclude[d] the matter presented to it." Moreover, where, as here, the complaint alleges wrongdoings, of constitutional and federal statutory dimension, by the Commission and its agents, appearance before the Commission itself does not seem an adequate remedy.[3]

---

**3.** *But see Bokat v. Tidewater Equipment Company,* 363 F.2d 667, 672 (5th Cir. 1966), cited by

the defendants because of the following remarks: "Of course, it is a shocking thing if an

██ In light of the fact that there is no formal administrative procedure available to the plaintiffs for the adjudication of their grievances and no proceeding in which such grievances might be aired (by way of defense or otherwise) has been commenced by the Commission, the court's exercise of jurisdiction does not embarrass " 'executive and administrative autonomy.' " [4] *McKart v. United States, supra*, 395 U.S. at 194, 89 S.Ct. 1657, quoting L. Jaffe, Judicial Control of Administrative Action 425 (1965). Furthermore, the complaint here does not create factual or legal issues that the Commodity Futures Trading Commission, or any other administrative agency, is uniquely suited to resolve; rather, claims of conduct exceeding delegated authority and violating constitutional rights do not implicate agency expertise and are peculiarly appropriate for judicial determination. [5] *McKart v. United States, supra*, 395 U.S. at 198–99, 89 S.Ct. 1657.

agent of the Government is engaged in solicitation of knowingly false testimony. But the judge did not find that this occurred. And we have no doubt that the Board, responsible for the behavior and official conduct of its staff members, will find an adequate way of dealing with this so far as the purity of governmental process is concerned." The quoted passage was *dictum* in a case whose facts are distinctly different from those present here. In *Bokat*, the NLRB filed an administrative complaint alleging unfair labor practices. Subsequently, an amended complaint was issued, adding charges against the respondent employer's lawyer. The employer moved, before the NLRB hearing examiner, for a severance. Claiming that the lawyer's conduct was proper and necessary for the preparation of a defense to the original complaint, the employer asked that the hearing of the original charges be postponed until the allegations against the lawyer were adjudicated. The motion was denied. Relief was sought from the district court. There, a subsidiary issue was raised, concerning a charge that NLRB investigating agents had encouraged respondent's employees to testify falsely during the preliminary investigation (which gave rise to the original complaint). Unlike the situation in the present case, no relief was requested against the accused agents. The normal administrative proceeding, which would afford an opportunity to cross-examine the allegedly lying witnesses, furnished a complete remedy.

4. Cases in which the courts have declined to interrupt the administrative scheme typically

## Sovereign Immunity

██ Though exhaustion is no obstacle to maintenance of the present suit, sovereign immunity is, in part, and it warrants dismissal of that portion of the complaint which seeks relief against the Commission. The Commission is immune because Congress has not authorized, either "in explicit language or impliedly because the agency is the offspring of . . . a suable entity," suits against the Commission in its own name. *Blackmar v. Guerre*, 342 U.S. 512, 515, 72 S.Ct. 410, 412, 96 L.Ed. 534 (1952) (footnote omitted); *Economou v. United States Department of Agriculture*, 535 F.2d 688 (2d Cir. 1976), *cert. granted*, 429 U.S. 1089, 97 S.Ct. 1097, 51 L.Ed.2d 534 (1977); *see, also, Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). *Blackmar* prohibits any suits against the Commis-

involve attempts to circumvent administrative procedures that have already been set in motion, either by the filing of an administrative complaint or notice of a hearing before an administrative judge. *See* cases cited in the text of this opinion; *Jewel Companies, Inc. v. FTC*, 432 F.2d 1155 (7th Cir. 1970); *Lone Star Cement Corporation v. FTC*, 339 F.2d 505 (9th Cir. 1964); *Wolf Corporation v. S. E. C.*, 115 U.S.App.D.C. 75, 317 F.2d 139 (1963). Our exercise of jurisdiction will not, as it would have in the above mentioned cases, interrupt an administrative process that is bound to end with some judicially reviewable order.

5. Further support for the conclusion that the exhaustion doctrine poses no obstacle to the present suit may be found in *American International Trading Company v. Bagley*, 536 F.2d 1196, 1198 (7th Cir. 1976). There, plaintiffs sought and obtained injunctive relief against certain investigative techniques employed by the Commodity Futures Trading Commission. The relief was granted over the Commission's claim that plaintiff had failed to exhaust administrative remedies. The Court of Appeals for the Seventh Circuit reversed the lower court and dismissed the complaint. The basis for the appellate disposition was that plaintiff's complaint was meritless. The Court did not indicate that failure to exhaust administrative remedies precluded the district court from entertaining the complaint at all. *See, also, Id.* (Campbell, J., dissenting).

sion, *eo nomine*, whether the relief requested is for damages or for an injunction. The prohibition is not altered by the Administrative Procedure Act. § 702 of that Act provides that:

> "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States . . ."

"Agency action" is defined in an earlier section of the APA, 5 U.S.C. § 551(13): " 'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act . . . " Nowhere in the complaint is there an allegation that the Commission has taken a step that amounts to "agency action" within the meaning of the APA. (Although it appears from affidavits filed by the individual agents that the Commission ordered investigation of FAS, such an order is not an "order" within the meaning of § 551(13). *See* 5 U.S.C. § 551(6): " 'order' means the

whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing . . . ")

That the Commission is immune from suit does not pose a serious problem for the plaintiffs, since they may be able to obtain the requested specific relief—an end to *ultra vires* acts that have violated their constitutional rights—by suing, as they have done, the two Commission agents who are alleged to have actually performed the accused acts. Permitting the agents to be sued for the alleged wrongful acts does not violate the rule that a prohibited suit against the sovereign cannot be accomplished by suing the sovereign's agents, *Larson v. Domestic & Foreign Corp., supra*, 337 U.S. at 688, 69 S.Ct. 1457, since no lawful function of the sovereign is impeded when its agents are prevented from committing violations of federal statutory or constitutional law.[6] *Cf., Id.*, at 688, 69 S.Ct. 1457. In this case, the agents are alleged to have exceeded their statutory investigative authority, 7 U.S.C. § 12, by (1) commencing an investigation for purposes of harassment, retaliation, and personal gain in violation of 18 U.S.C. § 201 and the First and Fifth Amendments of the Constitution (as well as the above mentioned enabling provision), and (2) conducting the unauthorized investigation in a manner violative of the same federal laws. These allegations are sufficient to prevent interposition of the defense of sovereign immunity to an injunctive action against the agents.[7]

---

**6.** That is,

> "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are *ultra vires* his authority and therefore may be made the object of specific relief." *Id.*, 337 U.S. at 689, 69 S.Ct. at 1461; *accord, Leonhard v. Mitchell*, 473 F.2d 709, 712 n.2 (2d Cir.) *cert. denied*, 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1002 (1973); *Berk v. Laird*, 429

F.2d 302, 306 (2d Cir. 1970), *cert. denied*, 404 U.S. 869, 92 S.Ct. 94, 30 L.Ed.2d 113 (1971).

**7.** We express no opinion whether the specific factual allegations of the complaint amount, as a matter of law, to violations of constitutional dimension or to contraventions of federal statutory law. If not, and plaintiffs have merely stated claims under theories of common law tort, the defense of sovereign immunity may yet be available to the individual agents in an action for specific relief. *See Larson v. Domestic & Foreign Corp., supra*, 337 U.S. at 693–95, 69 S.Ct. 1457, 1463. There, the Court ruled that:

It should be noted that plaintiffs seek damages, as well as injunctive relief, against the Commission's agents. The potential availability of a damage remedy raises serious questions, since none of the statutory provisions under which this action arises provides for monetary relief and since there is no law in this Circuit on the question whether violations of the First and Fifth Amendments entitle one to compensatory relief. Though damages might generally be available in tort, there is a question whether the agents enjoy sovereign immunity from suit for merely tortious conduct (see *supra*, n. 6). These questions, going to the court's remedial jurisdiction, have not been briefed, and our refusal to dismiss the action against the agents is without prejudice to their later arguing the question whether they are accountable in damages.

*Irreparable Injury*

 Finally, defendants argue for dismissal on the grounds the "plaintiffs have failed to allege or show facts evidencing irreparable injury." (Defendants' Memorandum at 13). Such a showing is not necessary to maintain an action for damages, and though it must ultimately be made in order to obtain injunctive relief, it need not be made by way of complaint—plaintiffs need not plead evidence. Certainly, plaintiffs have alleged irreparable injury, for they claim that the abusive acts of the Commission's agents—including intimidation of FAS employees, leaks to the public that FAS is the subject of an investigation, and criminal conduct—threaten to put the plaintiffs out of business. We agree with the defendants that "it is a necessary hazard of doing business to be the subject of an inquiry by a government regulatory agency," *Securities and Exchange Commission v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973), *cert. denied*, 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974), so that the expenses and interruptions attendant to compliance with a *lawful* investigation cannot be invoked as grounds for halting such an investigation. But it is unrealistic to read the rule stated in *Brigadoon* as countenancing abusive, harassing and criminal conduct—all alleged here—on the part of government investigators. Injuries caused by that kind of conduct are, if established, sufficient to warrant exercise of the court's equity powers. *Cf., American International Trading Company v. Bagley*, 536 F.2d 1196, 1198 (7th Cir. 1976); *Securities and Exchange Commission v. Brigadoon Scotch Distributing Co., supra*, 480 F.2d at 1056.

\* \* \*

For the reasons stated above, the complaint against the Commission is dismissed. In all other respects, defendants' motion is denied.

It is so ordered.

"[t]he mere allegation that the officer, acting officially, wrongfully holds property to which the plaintiff has title [the tort alleged in *Larson*] does not meet [the] requirement [that the accused action is not attributable to the sovereign]. True, it establishes a wrong to the plaintiff. But it does not establish that the officer, in committing that wrong, is not exercising the powers delegated to him by the sovereign."
That is, where the agent's act, though tortious, is nevertheless within the scope of his agency, immunity is intact:

"[w]e hold that if the actions of an officer do not conflict with the terms of his valid statutory authority, then they are the actions of the sovereign, whether or not they are tortious under general law, if they would be regarded as the actions of a private principal under the normal rules of agency. A Government officer is not thereby necessarily immunized from liability, if his action is such that a liability would be imposed by the general law of torts. But the action itself cannot be enjoined or directed, since it is also the action of the sovereign."