In the Matter of an Application to Enforce Administrative Subpoenas of the **COMMODITY FUTURES TRADING COMMISSION, Applicant,**

v.

**Thomas W. HARKER, et al.,
Respondents.**

**Misc. A. No. 85–0170.**

United States District Court,
District of Columbia.

Aug. 12, 1985.

---

John C. Winkfield, Dennis M. O'Keefe, and Stephen Hall of the Div. of Enforcement, Commodity Futures Trading Com'n, Washington, D.C., for applicant.

Constantine John Gekas (argued) and Adrianne S. Harvitt of Harvitt & Gekas, Chicago, Ill., Joseph A. Ingrisano and F. Joseph Warin of Kutak, Rock & Campbell, Washington, D.C., for respondents.

CHARLES R. RICHEY, District Judge.

The Court has before it an application to enforce administrative subpoenas of the Commodity Futures Trading Commission, and a motion to quash or limit the subpoenas. Respondents have also moved, in the alternative, for discovery and a hearing, and for a change of venue. For the reasons stated herein, the Court denies most of the respondents' motions. However, the Court imposes some minor limitations on the subpoenas at issue, and enforces those subpoenas as so limited.

## BACKGROUND

Most of the facts pertinent to the instant motions are undisputed. The Commodity Futures Trading Commission ("CFTC" or "the Commission") is an independent federal agency responsible for regulating the nation's commodity futures markets and enforcing the Commodity Exchange Act, as amended ("the Act"), 7 U.S.C. § 1 *et seq.* The Commission has its principal office in Washington, D.C., and a branch office in Kansas City, Missouri.

On February 13, 1985, pursuant to 7 U.S.C. § 15, the Commission entered an Order designating persons to issue subpoenas and take testimony in an investigation entitled "In the Matter of Trinity Metals Exchange, Inc." Trinity Metals Exchange, Inc. ("Trinity") is a corporation organized under the laws of the State of Florida, with its principal place of business in Blue Springs, Missouri. Trinity is engaged in the business of the cash sale for the forward delivery of certain precious metals to the public. The stated purpose of the CFTC investigation is to determine if Trinity's sales and marketing practices violate any provisions of the Act.

On February 13, 1985, the Commission entered a separate Order in an investigation entitled "In the Matter of Banks, Barron & Stone, Inc." The stated purpose of the investigation of Banks, Barron & Stone, Inc. ("Banks") is identical to that for the investigation of Trinity. The Commission later determined that Banks is now wholly owned by Trinity.

On March 28, 1985, pursuant to the Trinity Order, the Commission issued subpoenas to three of the respondents herein: Thomas W. Harker, the majority shareholder, President, and Chief Executive of Trinity; Benjamin Biber, Trinity's Executive Vice President and Secretary; and Russell Gose, former Vice President and currently an independent consultant to Trinity. The subpoenas directed the respondents to either produce an extensive list of documents on April 19, 1985 at the Commission's offices in Washington, D.C., or to appear at those offices and produce the documents on April 22, 23, and 24, 1985.

In early April, 1985, counsel for the respondents met informally with the Commission staff to discuss compliance with the subpoenas. Respondents' counsel attempted to limit the scope of the subpoenas, contending that they require the production of virtually every document generated by Trinity since January 1, 1983. The Commission asserts that the parties reached certain agreements limiting the scope and affecting the timing of the production of the documents. Respondents assert that no firm agreement was achieved during these negotiations. It is undisputed, however, that respondents sought, and were denied, assurances by the Commission that it would not disseminate any of the documents to other law enforcement agencies, particularly those of several interested state governments. To date, these respondents have refused to honor these subpoenas, and the Commission now seeks enforcement of them as written, without limitation.

On April 4, 1985, the Commission issued a subpoena to respondent Al Puglia and/or the Custodian of Records for Banks. It appears that respondent Puglia now works for Trimex Corporation, formerly known as Banks, Barron & Stone, and which is now wholly owned by Trinity. The subpoenas required Puglia or the Banks Custodian of Records to appear at designated offices in Miami, Florida, on April 18 (later changed to April 25), 1985. The subpoena required testimony and the production of a collection of documents. To date, respondent Puglia has refused to honor this subpoena, and the Commission seeks judicial enforcement of it.

Respondents contend that prior to and throughout the above-recited events, the Commission has been engaged in a pattern of harassment against them. As early as July, 1984, respondent Biber and Trinity's then-counsel Mr. Novak spoke to Mr. John A. Field III. Mr. Field is now a lawyer representing other companies in the commodity futures industry, having served for approximately three years as the CFTC Director of Enforcement. Respondents contend that Mr. Field told them that certain people at the Commission had alerted him that the Commission was preparing to bring a Temporary Restraining Order against Trinity and similar firms. *See* Novak Aff.; Biber Aff. Mr. Field contends that he learned of the Commission's interest in firms such as Trinity through his representation of similar companies which had been investigated by the Commission; that he related to Mr. Novak his suspicion that the CFTC may take some injunctive action against Trinity, in part because of Trinity's high-profile advertising campaign; that he was interested in what Trinity's defensive posture would be in the event litigation took place; and that no CFTC official told him of any particular company, other than Field's clients, that was under CFTC investigation. Field Aff.

Fearing that the Commission would seek a temporary restraining order against Trinity, respondents' counsel demanded, and was denied, CFTC assurances that Trinity receive notice before the Commission instituted legal action. Counsel even wrote letters to the Clerk and all judges of the

United States District Court for the Southern District of Florida, where counsel expected CFTC to file an action, requesting an opportunity to be heard in the event the Commission sought *ex parte* relief. The Commission never did institute *ex parte* legal proceedings.

Respondents have also received investigative demands from various state agencies charged with the investigation of securities registration since July, 1984. Respondents assert that they have uniformly refused to submit confidential business information to these state agencies, contending that the agencies lack jurisdiction over Trinity because Trinity does not offer securities. To date, no state has instituted any formal proceedings against Trinity.

Respondents suspect that these state agencies, and perhaps other state and federal agencies, have already requested or will in the future request access to various Trinity records held by CFTC. Respondents fear that that if they submit the subpoenaed information to CFTC, the Commission will then release the information to other investigative agencies, including several state agencies. Respondents are intimidated by the prospect of several agencies using the information provided to CFTC to contact Trinity's customers, resulting in harm to Trinity's good will and, in respondents' terms, constituting harassment. Additionally, once the information is in their hands, respondents will be unable to contest the jurisdiction of these agencies to obtain the information. As noted, this appears to have been the major sticking point in the respondents' negotiations with the Commission; when it became clear that the Commission would not agree to withhold the subpoenaed information from state, investigative agencies, the negotiations broke down.

Respondents were also concerned by one further event. On April 11, 1985, shortly after the subpoenas were issued, two CFTC agents made an unwarranted visit to Trinity's Kansas City office. The agents demanded access to much of the information sought by the subpoenas. The agents left the premises after respondents' counsel contacted CFTC personnel in Washington.

On April 25, 1985, respondents filed an action in the Western District of Missouri, seeking to quash or limit the subpoenas on grounds substantially similar to those raised here. *Trinity Metals Exchange, Inc., et al. v. CFTC*, C.A. No. 85–W–083. Respondents also sought discovery into the circumstances surrounding the issuance of the subpoenas. The Court dismissed the case on two grounds, which were raised by CFTC: (1) that respondents had not filed a complaint, as required by Fed.R.Civ.P. 3; and (2) that, even construing the motion to quash as a complaint, the motion was not ripe because the Commission had not yet sought to enforce the subpoenas pursuant to its authority under 7 U.S.C. § 15.

On June 26, 1985, the Commission filed this action seeking enforcement of the subpoenas. Respondents have opposed the enforcement. Respondents contend that summary enforcement of these proceedings is improper, and seek discovery into the circumstances surrounding the institution of the investigations and the issuance of the subpoenas. Respondents also contend that the CFTC Orders are defective, that the subpoenas are overly broad and should be limited, that the Commission should be enjoined from releasing any of the subpoenaed information to other investigative agencies, and that this case should be transferred to the Eastern District of Missouri pursuant to 28 U.S.C. § 1404(a). On August 5, 1985, the Court held a hearing on these matters. As demonstrated below, the Court must reject most of respondents' contentions, and the Court enforces the subpoenas with limitations.

## RESPONDENTS ARE NOT ENTITLED TO AN EVIDENTIARY HEARING OR TO DISCOVERY

Subpoena enforcement proceedings are generally summary in nature. *F.T.C. v. Carter*, 636 F.2d 781, 789 (D.C.Cir.1980). A district court has discretion to grant or deny discovery requests, but such "re-

quests are not looked on favorably in subpoena enforcement proceedings." *Id.*

In *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964), the Supreme Court recited the showing that the Internal Revenue Service was obligated to make before it was entitled to enforcement of its summons. The agency must show that the investigation is being conducted pursuant to a legitimate purpose, that the information sought is relevant to that purpose, that the agency does not already have the information, and that the administrative prerequisites have been exhausted. *Id.*

■ In the instant case, the Commission has met all of these requirements. The purpose of the investigation is authorized by the provisions of Section 8(a) of the Act, 7 U.S.C. § 12(a), in that the Commission is investigating possible violations of Sections 4(a) and 4b of the Act, 7 U.S.C. §§ 6(a) and 6b, and any other possible violations of the Act. The information sought is relevant to the broad purposes of the investigation. It is undisputed that the Commission does not possess the requested information. Finally, all administrative steps have been taken, and the Act grants the Commission the authority to subpoena witnesses and to seek judicial enforcement of such subpoenas. 7 U.S.C. § 15. Accordingly, CFTC has satisfied the *Powell* requirements.

■ Respondents correctly point out that, in certain "extraordinary circumstances", discovery may be appropriate to examine if the agency has acted in bad faith. *Carter*, 636 F.2d at 789. *Accord, S.E.C. v. Dresser Industries*, 628 F.2d 1368, 1388 (D.C.Cir.), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980); *United States v. Exxon Corp.*, 628 F.2d 70, 77 n. 7 (D.C.Cir.), *cert. denied*, 446 U.S. 964, 100 S.Ct. 2940, 64 L.Ed.2d 823 (1980). Respondents attempt to bring themselves within this exception to the general "trend" of summary enforcement, *see CFTC v. Rosenthal and Co.*, [1980–1982 Transfer Binder] Comm.Fut.L.Rep. (CCH) ¶ 21,012 (N.D.Ill. 1980), by identifying in the record "special circumstances that raise doubts about the

agency's good faith", entitling them to discovery. *Dresser*, 628 F.2d at 1388. As demonstrated below, however, the circumstances identified by respondents are insufficient to justify any discovery.

Respondents state that there is evidence that the Commission "leaked" information about the Trinity investigation to Mr. Field. There is a dispute as to how Mr. Field found out about the Commission's interest in Trinity, *compare* Field Aff. *with* Novak and Biber Aff.s, but this dispute is not significant. The formal Trinity investigation did not begin until February, 1985, so the asserted "confidentiality" provisions of the Act and CFTC regulations did not apply in July, 1984, when the communications with Field took place. *See* 7 U.S.C. § 12; 17 C.F.R. § 11.3. Moreover, even if these provisions applied to the Trinity investigation in July, 1984, they do not provide respondents with a guarantee of confidentiality. Such a "leak", if it took place at all, is not the sort of "extraordinary circumstance" justifying discovery under the facts of this case. *Carter*, 636 F.2d at 789.

Respondents also contend that the burdensome nature of the subpoenas demonstrate agency bad faith. Any indication that the Commission issued subpoenas with a broad scope in an effort to harass respondents is refuted by the subsequent negotiations, in which the Commission agreed to limit the scope of the subpoenas. Additionally, respondents' argument that the Commission desires to contact Trinity's customers to interfere with its business relations is mere speculation. Moreover, agency communications with Trinity's customers is a sign of a thorough investigation, not harassment.

Respondents felt harassed by the appearance of the two CFTC agents at Trinity's Kansas City office. The parties seem to agree, however, that this awkward episode was caused by inadequate communications within the agency, which certainly is not the sort of intentional harassment which could be considered bad faith. Even if intentional, the agents were not there long, as respondents' counsel admitted at oral

argument that the agents were given coffee and left shortly thereafter.

The Court also finds no evidence of bad faith in the CFTC's decision to enforce the subpoenas in Washington, D.C., rather than in Kansas City. Similarly, the Commission cannot be faulted for refusing to agree to withhold the information from state investigative agencies. The Act provides for a certain amount of CFTC cooperation with such agencies. *See* 7 U.S.C. §§ 12(e) and 16(a). The Court will not give any further consideration to respondents' contention that these sections do not justify the release of information to these other agencies, because this contention is not properly before the Court in this summary enforcement proceeding.

In sum, respondents have attempted to find agency bad faith from a series of mostly innocuous circumstances. These circumstances do not justify a departure from the normal rule that "[d]iscovery requests are not looked upon favorably in subpoena enforcement proceedings...." *Carter*, 636 F.2d at 789. The Court denies the request for discovery in this case.

### THE ORDERS OF INVESTIGATION ARE NOT DEFECTIVE

■ Respondents assert that the February 13, 1985, Orders of Investigation, which relate to the now-consolidated Banks and Trinity investigations, are defective in that they do not adequately apprise respondents of the investigations' purposes. This argument is without support.

"[A]n agency will be deemed to have given adequate notice of the purposes of an investigation by reciting its statutory duties when the statutes themselves alert the parties to the purposes of the investigation." *Carter*, 636 F.2d at 787. The Orders begin by reciting the Commission's statutory duties. Although the Orders contain some insignificant erroneous citations, the first sentence of each of the Orders in this case clearly states that the Commission is proceeding under the authority granted to it by Section 6(b) of the Act. Respondents suggest that the Trinity Or-

der, which contains a typographical error in its citation to a statutory section, is fatally defective. The Trinity Order, however, further indicates that the Commission is investigating possible "violations of Sections 4(a) and 4(b) [sic] of the Act, 7 U.S.C. §§ 6(a) and 6b (1982), *or practices in violation of other provisions of the Act and the Commission's Regulations.*" (Emphasis supplied). The underscored language makes clear that any erroneous citation is insignificant, particularly where, as here, it appears that there is no doubt about which of Trinity practices are under agency investigation. By the plain terms of the Orders, respondents had adequate notice. *Carter*, 636 F.2d at 787. These Orders are not defective.

### THE COURT MUST IMPOSE MINOR LIMITATIONS ON THE SCOPE OF THE SUBPOENAS

■ "The test for the relevancy of an administrative subpoena ... is whether the information sought is 'reasonably relevant' to the agency's inquiry." *F.T.C. v. Anderson*, 631 F.2d 741, 745 (D.C.Cir.1979). The relevance of the requests must be measured against the purposes of the agency's investigation. *F.T.C. v. Texaco, Inc.*, 555 F.2d 862, 874 (D.C.Cir.) (*en banc*), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1072 (1977). Respondents state that the Commission's subpoenas cannot meet this standard. Respondents also state that the subpoenas are overbroad, and that compliance would substantially interfere with Trinity's business. For the reasons developed below, the Court holds that the subpoenas are not so broad as to be fatally defective, but the Court will restrict their scope to a limited extent.

The purposes of the Trinity investigation, as stated in the February 13, 1985, Order, are very broad. *Anderson* and *Texaco* teach that the information sought by these subpoenas must be reasonably relevant to these purposes. Measured against the Trinity Order alone, conceivably every document at Trinity could be considered reasonably relevant. In this case, however,

the Commission has represented to the Court that, during the April, 1985, negotiations with respondents' counsel, the Commission agreed to certain scope limitations. The Court can only conclude, therefore, that not everything sought on the face of these subpoenas is "reasonably relevant". *Anderson*, 631 F.2d at 745. Accordingly, the Court will enforce agreed-to limitations, as those have been represented to the Court by the Commission, through counsel.

Respondents need not submit original documents; copies will suffice. *CFTC's Reply Memorandum* at 4. Respondents must provide only one set of the requested documents. *Id.* At oral argument, the Commission indicated that it agreed to accept a representative sampling of one-tenth of customer names, so respondents will not be obligated to submit more than that. The Court will also give respondents one week to comply with the subpoenas, as limited herein. These limitations apply to the subpoenas to all four respondents. Aside from these limitations, the Court enforces the subpoenas as drafted by the Commission.

### THIS CASE WILL NOT BE TRANSFERRED

This is a summary proceeding for the enforcement of administrative subpoenas. The Court has denied respondents' requests for discovery and an evidentiary hearing. Accordingly, there is no need to transfer this case to Missouri, and the Court denies respondents' request therefor.

### CONCLUSION

The Court finds insufficient indicia of bad faith or harassment on the part of the Commission to justify granting respondents any discovery. The Court has declined to rule on the question, apparently never before adjudicated, of whether the CFTC may grant access to the subpoenaed information to other investigative agencies. The Court finds that the Orders of Investigation are valid, and the Court enforces the subpoenas with certain limitations. In light of this result, there is no reason to transfer this case to another district. An appropriate Order has been issued.