**AVCO FINANCIAL CORP., Plaintiff,**

v.

**COMMODITY FUTURES TRADING COMMISSION, Defendant.**

**No. 96 Civ. 2853 (JGK).**

United States District Court, S.D. New York.

June 5, 1996.

---

Paul M. Brown, Parson & Brown, New York City, John Troelstrup, Oak Park, Illinois, for plaintiff.

Jay L. Witkin, Deputy General Counsel by William S. Liebman, Assistant General Counsel Laura V. Rubino, Commodity Futures Trading Commission Office of General Counsel Washington, D.C., Lenel Hickson, Jr., Deputy Regional Counsel, Lance P. Chabus, Commodity Futures Trading Commission, New York City, for defendant.

## OPINION AND ORDER

KOELTL, District Judge:

This is a motion brought by AVCO Financial Corp. ("AVCO") seeking a preliminary injunction pursuant to Fed.R.Civ.P. 65. AVCO seeks to enjoin the Commodity Futures Trading Commission ("the Commission" or "CFTC") from proceeding with its investigation of AVCO. In particular, AVCO seeks to enjoin certain discovery the Commission wishes to obtain from AVCO and its officers, and also to enjoin the Commission from contacting AVCO's customers or potential customers.

AVCO is a software developer and publisher that markets and sells a trade-signalling computer program under the name "Recurrence." The software is designed to chart data in the Swiss Franc futures market and to assist the user in analyzing that market. (*See* Vartuli Aff. ¶¶ 3, 6, and 7.) The Commission is conducting an investigation of AVCO pursuant to a properly authorized formal order of investigation issued by the Commission on January 23, 1996. (Compl.Ex. B.) The purpose of the investigation is:

> to determine whether, in connection with the marketing and sale of certain software purporting to represent a system of technical analysis for use in the trading of futures contracts, AVCO Financial Corporation, Anthony R. Vartuli, Michael Gent, or any other person, firm or entity has engaged, or is engaging, in acts and practices in violation of Sections 4b(a), 4k(3), 4m(1) or 4o (1) of the Act, 7 U.S.C. §§ 6b(a), 6k(3), 6m(1) and [6]o (1) (Supp. IV 1992), or in any other acts or practices in violation of any other provisions of the [Commodity Exchange] Act or the Regulations which may come to the attention of the Commission staff during the course of this investigation.

AVCO ultimately seeks declaratory relief in the nature of a judicial determination that it is not a commodity trading advisor as defined in the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, and therefore allegedly beyond the jurisdiction of the Commission in its enforcement capacity. This motion was brought by order to show cause which also sought a temporary restraining order. Following a conference held on April 19, 1996, the Commission agreed to hold its investigation in abeyance and adjourn the deposition of AVCO's President, Anthony R. Vartuli, originally scheduled for April 24, 1996. Consequently, AVCO withdrew its request for a temporary restraining order and the parties proceeded to brief the motion for a preliminary injunction on an accelerated schedule. The Court has reviewed the parties' submissions and has listened to argument by counsel at a hearing held on June 4, 1996. At the hearing, the Court afforded the parties the opportunity to present any other evidence in support of or in opposition to the motion. After considering the arguments of counsel, the submissions, and after reviewing the relevant authorities, the Court makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 65.

### I.

A party seeking a preliminary injunction must normally establish the familiar standard of (1) irreparable harm, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground of litigation and a balance of hardships tipping decidedly in its favor. *See, e.g., Waldman Publishing Corp. v. Landoll, Inc.,* 43 F.3d 775, 779–80 (2d Cir.1994); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). When a plaintiff seeks to enjoin governmental action tak-

en in the public interest pursuant to a statutory or regulatory scheme, however, the plaintiff must establish, in addition to irreparable injury, the more rigorous likelihood of success on the merits standard and not simply sufficiently serious questions going to the merits to make them a fair ground of litigation and a balance of hardships tipping decidedly in its favor. *Plaza Health Labs., Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir.1989).

■ AVCO must meet the *Plaza Health* standard in this case to justify a preliminary injunction. AVCO seeks to halt an ongoing investigation by the government agency charged with enforcement of a federal statute. AVCO does not dispute the Commission's authority to conduct investigations within its jurisdiction. Rather, AVCO argues that it need not satisfy the *Plaza Health* standard because it has challenged the jurisdiction of the Commission, thus raising a question about whether the Commission's actions are proper or authorized in AVCO's case. Therefore, AVCO argues, the *Plaza Health* standard should not apply. AVCO points to no support for such a proposition, and such an exception would be unreasonable because it would eviscerate the standard any time a plaintiff challenged the authority of a governmental agency concededly performing its ordinary functions.

Accordingly, AVCO's motion for a preliminary injunction is properly evaluated under the *Plaza Health* standard. As explained below, however, AVCO would not be entitled to a preliminary injunction even under the less rigorous standard.

## II.

■ The first element AVCO must demonstrate is that it will suffer irreparable injury unless a preliminary injunction is issued. The showing of irreparable injury is an "absolute prerequisite," *Fireman's Fund Ins. Co. v. Leslie & Elliott Co., Inc.,* 867 F.2d 150, 151 (2d Cir.1989), to issuing an injunction, and the required showing is "extremely high." *Firemen's Ins. Co. of Newark v. Keating,* 753 F.Supp. 1146, 1150 (S.D.N.Y. 1990). To establish irreparable injury, the plaintiff must demonstrate "an injury that is neither remote nor speculative, but actual

and imminent.... [I]t is not sufficient for a movant to demonstrate merely the possibility of irreparable harm. An applicant for a preliminary injunction must show that it is likely to suffer irreparable harm if equitable relief is denied." *Id.,* 753 F.Supp. at 1150 (citations and quotations omitted).

■ AVCO attempts to establish irreparable injury by complaining that the Commission's investigation and the manner in which it has been conducted has caused AVCO customers to cancel their orders for the Recurrence software, has made existing users skittish, and has tarnished AVCO's business reputation perhaps resulting in further indeterminate lost sales. The exact amount of the alleged lost sales are not quantified, although AVCO alleges that three orders for software worth approximately $15,000 in total were cancelled by customers who purportedly expressed concern about the investigation. Demonstrated injury to business reputation and goodwill may be sufficient to establish irreparable injury, but such damages are not always irreparable. *See, e.g., Penthouse Int'l, Ltd. v. Playboy Enter., Inc.,* 392 F.Supp. 257, 261 (S.D.N.Y.1974). While AVCO's lost sales are classically economic injuries ordinarily compensable in money damages, AVCO asserts, and the Commission does not dispute, that such a recovery from the Commission would be precluded in this case by sovereign immunity. But "the mere suggestion by [a party] of possible damage to their business activities is not sufficient to block an authorized inquiry into relevant matters." *SEC v. Brigadoon Scotch Dist. Co.,* 480 F.2d 1047, 1056 (2d Cir.1973), *cert. denied,* 415 U.S. 915, 94 S.Ct. 1410, 39 L.Ed.2d 469 (1974). As explained by the Court of Appeals for the Second Circuit:

> Every person doing business and every investor knows that government agencies conduct investigations for a variety of reasons, and most of them feel the duty to respond to a proper inquiry. As for those whose practices are investigated, it is a necessary hazard of doing business to be the subject of an inquiry by a government regulatory agency.

*Id.,* 480 F.2d at 1056.

■ In *American Int'l Trading Co. v. Bagley,* 536 F.2d 1196 (7th Cir.1976), the

court vacated an injunction of a CFTC investigation. The plaintiff complained that the CFTC had initiated interviews with its customers and was destroying its business, and the district court granted both a temporary restraining order and a preliminary injunction. The Court of Appeals for the Seventh Circuit vacated the injunction, observing that there was no evidence that the CFTC was conducting its investigation in an unauthorized, abusive, or harassing manner. *Id.,* 536 F.2d at 1198 (quoting *Brigadoon Scotch*).

In *Fairchild, Arabatzis & Smith, Inc. v. Sackheim,* 451 F.Supp. 1181, 1188 (S.D.N.Y. 1978), the court held that the plaintiff had alleged sufficient irreparable injury to withstand a motion to dismiss where it alleged that "the abusive acts of the Commission's agents including intimidation of [its] employees, leaks to the public that [it] is the subject of an investigation, and criminal conduct threaten to put the plaintiffs out of business." The court distinguished *Brigadoon Scotch,* noting that: "[I]t is unrealistic to read the rule stated in *Brigadoon* as countenancing abusive, harassing and criminal conduct all alleged here on the part of government investigators. Injuries caused by that kind of conduct are, if established, sufficient to warrant exercise of the court's equity powers." *Id.,* 451 F.Supp. at 1188. *Fairchild* allowed the complaint to survive but was not decided in the context of a request for a preliminary injunction. Indeed, earlier requests to quash subpoenas had been dismissed on ripeness grounds. *Id.,* 451 F.Supp. at 1183 n. 1.

The crucial issue with respect to irreparable injury on this motion for a preliminary injunction is whether AVCO has demonstrated that the Commission has engaged in such harassing and abusive conduct as to establish irreparable injury. In this case, AVCO attempts to establish harassment based primarily on two alleged Commission actions. The first is the placing of a one paragraph item in the industry journal Club 3000, soliciting information about the Recurrence software and asking people with such information to call a Commission investigator named "Jack Litevski." This solicitation made its way onto the Internet, although AVCO does not allege the Commission was responsible for disseminating the Club 3000 item in that manner. The second Commission action to which AVCO attributes its injuries is the alleged harassment of AVCO customers by Commission investigators, specifically having an investigator inform certain customers of the existence of an investigation characterized as a "serious matter."

The Commission vigorously disputes AVCO's allegations about the conduct of its investigation. The Commission denies that its investigator placed the solicitation in Club 3000, advised anyone that the investigation was a "serious matter," or otherwise harassed or intimidated AVCO customers. The Commission has submitted affidavits from investigator Jack Litevsky in which Mr. Litevsky disavows any responsibility for the item in Club 3000 and denies ever having told an AVCO customer that the AVCO investigation should be considered a serious matter.[1] The Commission has also submitted the affidavit of Bo Thunman, editor of Club 3000, who avers that he composed and printed the solicitation for information in his journal without any prompting or request to do so from Mr. Litevsky. The Commission points out that the solicitation appeared under the heading "the editor speaks" in the Club 3000 journal, and not in "Letters to the Editor" as AVCO represented in its papers. Additionally, the Commission points out that Mr. Litevsky's name was misspelled and the fax number was incorrect, features the Commission argues are inconsistent with the solicitation having been placed by Mr. Litevsky.

AVCO submitted affidavits in support of its contention that Mr. Litevsky was responsible for the solicitation but those affidavits are made on information and belief based on hearsay. Moreover, AVCO's submissions stand in direct contradiction to the Thunman and Litevsky affidavits made on personal knowledge by the people involved. Indeed, in a letter to the Court dated May 30, 1996,

---

1. Indeed, at oral argument, counsel for the Commission proffered that Mr. Litevsky, if called, would testify that he was unaware that Mr. Thun-

man was the editor of the Club 3000 publication at the time he contacted him.

plaintiff's counsel appeared to retreat from the allegation that Mr. Litevsky himself placed the item in Club 3000:

> A CFTC investigator contacted the publisher of a trade magazine in order to obtain information concerning AVCO. *As a consequence,* the existence of what was supposed to have been a purely confidential investigation *was published by the editor* of the publication and thereafter by publication on the Internet. Those are undisputed facts.

(Letter from Paul M. Brown to Hon. John G. Koeltl, sent by facsimile, May 30, 1996 at 15:50 (emphasis added).)

There is no credible evidence that the Commission sought the publication of the information appearing in Club 3000, and subsequently on the Internet. Any publication appears to have resulted from the Commission's legitimate pursuit of information in the course of a duly authorized investigation. The investigator called Thunman because he appeared to be a possible source of information for the investigation. (Litevsky Aff. ¶ 3.) And on his own initiative Thunman placed the solicitation for information in his journal. A preliminary injunction would not be warranted based on this incident. Not only was the Commission not responsible for that publication, but any harm from the past disclosure will not be stopped by a preliminary injunction. Furthermore, there is no evidence to suggest that the Commission plans to place such advertisements or requests for information in the future.

Apart from the Club 3000 matter, the evidence does not support a finding that the Commission or its investigators harassed AVCO customers or acted unreasonably in its investigation in any way. There is no credible evidence that the Commission publicized the investigation or harassed AVCO customers. In fact, the confidentiality provisions of the Commodity Exchange Act, *see* 7 U.S.C. § 12; 17 C.F.R. § 11.3, do not guarantee absolute confidentiality. *Cf. CFTC v. Harker,* 615 F.Supp. 420, 424 (D.D.C.1985) (alleged leak of CFTC investigation was not an extraordinary circumstance that would justify discovery in subpoena enforcement

proceeding on issue of CFTC bad faith). Investigators must be able to pursue legitimate interviews in the course of their investigation, even though those interviewed may include customers of the subject of the investigation. Finally, damage to business reputation arising generally from Commission contact with AVCO's customers is speculative at best, and such customer contact has been found to be "a sign of a thorough investigation, not harassment." *Id.; see also Bagley,* 536 F.2d at 1198 (finding no impropriety in CFTC investigation, including contact with plaintiff's customers).

Stripped of the allegations of particular instances of misconduct by the Commission's investigators, which are not substantiated, all that remains of AVCO's complaint of harassment and abuse is conjecture that AVCO's business has suffered because of awareness among customers that AVCO is under investigation by the Commission. Such speculation is not a sufficient demonstration of irreparable harm. *See Brigadoon Scotch,* 480 F.2d at 1056. Similarly insufficient is AVCO's argument that it faces irreparable harm stemming from the cost associated with being investigated, namely producing subpoenaed records, shepherding witnesses through depositions, and possibly defending itself in an enforcement proceeding. *See Citadel Trading Co., Ltd. v. Bagely,* 440 F.Supp. 925, 927 (E.D.Mo.1977) ("mere litigation expense, even if it is substantial, does not constitute 'irreparable injury.'" (citing *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938)).

Therefore, AVCO has not made a sufficient showing of irreparable injury to warrant preliminary relief. There is no credible showing that the Commission or its investigators have harassed or abused AVCO or acted in a manner outside of their authority or in contravention of law. There is no showing of the kind of abuses alleged in the *Fairchild* case. Accordingly, AVCO has not demonstrated irreparable injury sufficient to satisfy the first prong of the test of *Plaza Health.* On that basis alone, AVCO's motion for a preliminary injunction is denied.[2]

**2.** Because irreparable injury is an element of

both the ordinary standard for a preliminary

## III.

■ The motion for a preliminary injunction must also be denied because AVCO has failed to demonstrate a likelihood of success on the merits of its complaint. The thrust of AVCO's complaint is that the Commission lacks jurisdiction to investigate AVCO as a "commodity trading advisor." Under the Commodity Exchange Act, a commodity trading advisor is:

any person who—

(i) for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in—

(I) any contract of sale or a commodity for future delivery made or to be made on or subject to the rules of a contract market; ... or

(ii) for compensation or profit, and as part of a regular business, issues or promulgates analyses or reports concerning any of the activities referred to in clause (i).

7 U.S.C. § 1a(5). The Commission is authorized to register commodity trading advisors. *See* 7 U.S.C. § 12a. AVCO argues that its status under the definition of commodity trading advisor is a threshold question on which the propriety of the Commission's investigation rests. The Commission responds by arguing that the question of jurisdiction is not ripe for judicial determination.

As a preliminary matter, the Commission would have jurisdiction to investigate whether AVCO violated the anti-fraud provisions of the Commodity Exchange Act irrespective of whether AVCO is a commodity trading advisor. The anti-fraud provisions make it unlawful for any person to cheat or defraud another person in connection with certain sales contracts for commodities, and these provisions apply to persons irrespective of whether they are commodity trading advisors. *See* 7 U.S.C. § 6b(a). *See also Kearney v. Prudential–Bache Secs., Inc.,* 701 F.Supp. 416,

421–27 (S.D.N.Y.1988) (Mukasey, J.) (describing anti-fraud provisions generally and noting broad scope of § 6b). And the Commission's formal order of investigation specifically noted possible violations of § 6b(a) as a subject of the investigation.

In any event, AVCO has failed to show a likelihood that the issue of whether AVCO will eventually be determined to be a commodity trading advisor and subject to registration under 7 U.S.C. § 12a should be decided at this stage of the Commission's investigation.

This is not a case where enforcement proceedings have been brought against AVCO, and none may ever be brought. Nor is this a proceeding to enforce an investigatory subpoena. Rather, this is a preemptive attempt by AVCO to challenge the investigative authority of the Commission at a relatively early phase before the Commission has been allowed to investigate all the facts relating to AVCO. Indeed, at oral argument counsel for AVCO argued that this action was an effort to "short circuit" the lengthy subpoena enforcement proceeding or other enforcement action the Commission might undertake. But the Commission has the authority to conduct an investigation to determine the facts. At this point, the question of whether AVCO is or is not a commodity trading advisor under the Commodity Exchange Act is not likely to be ripe for judicial determination.

A similar effort to block an investigation in its early stages was rejected by the Court of Appeals for the Second Circuit in *Brigadoon Scotch.* In that case, the subjects of the investigation argued that subpoenas should not be enforced because the SEC had no regulatory power over them because the whiskey title certificates they issued were not "securities" subject to the SEC's jurisdiction. Here, AVCO argues that the software package it sells does not provide sufficiently personalized advice to subject AVCO to regulation as a commodity trading advisor. As the Court of Appeals for the Second Circuit explained in *Brigadoon Scotch:*

injunction and the more demanding standard under *Plaza Health,* even if the more permissive standard applied, AVCO's failure to demonstrate

irreparable injury would be fatal to its motion for preliminary relief.

However, it has long been settled that such issues are not to be decided in subpoena enforcement actions. The [Securities Exchange] Commission must be free without undue interference or delay to conduct an investigation which will adequately develop a factual basis for a determination as to whether particular activities come within the Commission's regulatory authority. *Id.*, 480 F.2d at 1052–53. *See also SEC v. Wall Street Transcript Corp.*, 422 F.2d 1371, 1375 (2d Cir.), *cert. denied*, 398 U.S. 958, 90 S.Ct. 2170, 26 L.Ed.2d 542 (1970) (citing *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 214, 66 S.Ct. 494, 508, 90 L.Ed. 614 (1946)).

The parties have not identified any cases where a plaintiff obtained injunctive relief from an investigation by the Commission prior to a subpoena enforcement proceeding. In *CFTC v. Harker*, 615 F.Supp. 420 (D.D.C. 1985), however, the court referred to an earlier proceeding in the case where the plaintiff sought discovery on the issuance of the Commission's subpoenas. *See Harker*, 615 F.Supp. at 423. The court noted that the discovery request, construed as a complaint, was "not ripe because the Commission had not yet sought to enforce the subpoenas pursuant to its authority under 7 U.S.C. § 15." *Id.*

The Commission cites a recent decision from the Second Circuit Court of Appeals relating to the investigatory authority of the Nuclear Regulatory Commission, where the court noted that a challenge to the jurisdiction of the governmental agency at the investigatory stage was premature. "If and when the NRC decides to use the information obtained by the subpoena, Respondents may then challenge whether they fall within the NRC's enforcement jurisdiction." *United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.1996) (citing *Oklahoma Press* and *Brigadoon Scotch* ).[3]

These cases illustrate the application of the ripeness doctrine to a case such as this one. In this case, pursuant to its authority under the Commodity Exchange Act, 7 U.S.C. §§ 12(a), 15, the Commission issued an Order of Investigation on January 23, 1996 "to determine whether ... AVCO Financial Corporation ... has engaged, or is engaging in acts and practices in violation of ... 7 U.S.C. §§ 6b(a), 6k(3), 6m(1) and [6]*o* (1).... " (Compl.Ex.B.) On February 1, 1996, pursuant to the Order of Investigation, the Commission served subpoenas for certain AVCO records. The Commission has the statutory power to issue those subpoenas. *See* 7 U.S.C. § 15. AVCO responded by producing some documents but refused to produce documents relating to its customers. On March 22, 1996, the Commission served a deposition subpoena on AVCO's President, Anthony R. Vartuli. That deposition has since been adjourned pending a disposition of this motion. The Commission has not yet brought subpoena enforcement proceedings and has not brought an administrative enforcement action or civil injunctive proceeding against AVCO. Nor has AVCO asserted any of its

---

3. Although not cited in its papers, at oral argument the Commission cited *Sprecher v. Graber*, 716 F.2d 968 (2d Cir.1983) and *Sprecher v. Von Stein*, 772 F.2d 16 (2d Cir.1985), cases involving complaints of harassment and abuse in the context of an SEC investigation. In *Graber*, the Court of Appeals for the Second Circuit, in discussing sovereign immunity of the SEC and section 702 of the Administrative Procedures Act, noted: "The initiation of an investigation and issuance of subpoenas are not unreviewable by the federal courts, however, for such subpoenas are unenforceable absent a court order issued under 15 U.S.C. § 78u(c) (1976). Parties who are the subject of such subpoenas are free in a proceeding under that section to raise claims of abuse of process.... " *Graber*, 716 F.2d at 974. The Court explained further in *Von Stein:*

A district court has no jurisdiction to award non-monetary relief against an agency on a claim that it is conducting an improper investigation where another statute provides an exclusive avenue of redress, or where the action complained of is committed to agency discretion. [Citing *Graber* ] The exclusive method for testing the validity of the SEC's investigatory motives or methods is a contested subpoena enforcement proceeding under 15 U.S.C. § 78u(c)....

*Von Stein*, 772 F.2d at 18.

Both of these cases relied upon sovereign immunity to find that the district court lacked jurisdiction over the complaints of harassment against the SEC. Because the Commission has not thus far raised sovereign immunity as a defense or as a reason for denying the injunction, and AVCO has not had the opportunity to respond to such an argument, the Court will not rely on it here.

rights as a witness under the Commission's own regulations. *See* 17 C.F.R. § 11.7. Instead, AVCO brought this motion for a preliminary injunction and filed a complaint seeking declaratory and injunctive relief. Under these circumstances, AVCO has failed to show that it is likely it will succeed in prevailing on the merits of its claim in this action. Any such success would require AVCO to overcome the defense of lack of ripeness—and, as explained above, that is a promising defense.

The strength of the ripeness defense effectively undermines AVCO's attempt to demonstrate a likelihood of success on the merits of its suit. On the merits, AVCO argues that it is similar to the newsletter publisher in *Lowe v. SEC*, 472 U.S. 181, 105 S.Ct. 2557, 86 L.Ed.2d 130 (1985), which was found not to be an investment advisor under the Investment Advisors Act of 1940. AVCO argues by analogy that it is not a commodity trading advisor. But *Lowe* was not decided in the same procedural posture as this case. *Lowe* was a case where the SEC brought proceedings against Lowe and several other defendants, alleging they had violated the Investment Advisors Act, and the Supreme Court eventually decided that case on a full record after trial. In contrast, the Commission has brought no such proceedings here and has not even attempted to enforce its investigatory subpoenas. Whatever value *Lowe* may have for the substantive arguments AVCO will make if the Commission brings an enforcement proceeding, it does nothing to support an argument that the Commission

should be prevented from investigating at this point.

Denying AVCO's motion for a preliminary injunction comports with widely recognized principles governing preemptive attempts to interrupt governmental agency action before it has run its course. In the words of AVCO's counsel, this motion represents an attempt to "short circuit" the Commission's investigation of AVCO. And while AVCO believes firmly that the Commission has already made a final determination that AVCO is a commodity trading advisor, counsel conceded at argument that no such formal determination has been made. The Commission maintains that it has not yet fleshed out all of the facts that would permit an ultimate conclusion on the question of AVCO's status as a commodity trading advisor. Counsel for the Commission elaborated during oral argument on the Commission's lack of a full understanding about the details of the Recurrence software, the particulars of its operation, and the nature of the interaction between AVCO's customers and the company's salespeople and technical support staff. The exploration of these areas is the avowed purpose behind the Commission's investigation.[4] AVCO has not begun to make the kind of showing necessary to enjoin the Commission in the middle of its duly authorized investigation of these areas. *See New York Mercantile Exch. v. CFTC*, 443 F.Supp. 326, 331 (S.D.N.Y.1977) ("Thus except in the most extreme circumstances a court's equity jurisdiction may not be invoked to obtain premature judicial review of administrative action, and restraints upon, or interferences with, an

---

4. This point distinguishes *United States v. Cabrini Medical Ctr.*, 639 F.2d 908, 910 (2d Cir.1981), where the court held it was proper to reach the issue of the administrative agency's statutory authority to investigate a hospital under the Rehabilitation Act. In *Cabrini*, the agency argued its investigatory authority derived from the hospital's receipt of federal funds in the form of Medicaid and Medicare payments. There was no dispute about the nature of those payments and they were not the subject of the investigation. The court held that the agency was not authorized to investigate the hospital because the Medicaid and Medicare payments did not provide the proper predicate for such an investigation under the Rehabilitation Act. The court noted: "[N]othing [the agency]'s intended investigation might reveal could create jurisdiction if it does

not exist on the facts before us.... We see no point in permitting the Government to institute an investigation with its attendant inconvenience, expense, and annoyance if there is and can be no authority for undertaking it." *Id.*, 639 F.2d at 910. The Court went on to hold the agency did not have the authority to investigate the hospital based on its receipt of Medicaid and Medicare payments. *Id.*, 639 F.2d at 911.

In AVCO's case, the Commission is investigating the very facts that will permit it to determine whether AVCO is a commodity trading advisor, and the reasoning of *Cabrini* does not apply. Moreover, irrespective of whether AVCO is a commodity trading advisor, the Commission would have the jurisdiction to investigate violations of the general anti-fraud provisions under 7 U.S.C. § 6b(a).

agency's administrative proceedings are to be discouraged."); *see also Treats Int'l Enters., Inc. v. SEC*, 828 F.Supp. 16, 19 (S.D.N.Y.1993) ("For a district court to 'conduct some kind of hearing to determine the scope and thrust of the ongoing investigation' would 'drain the resources of the judiciary as well as the Commission' and enable targets of investigations to hamper the SEC's efforts to enforce the securities laws." (quoting *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 750 & nn. 23 & 24, 104 S.Ct. 2720, 2729–30 & nn. 23 & 24 (1984))).[5]

Accordingly, AVCO has failed to demonstrate a likelihood of success on the merits of its case because of the likely validity of the Commission's ripeness defense. This failure to satisfy the second prong of *Plaza Health* is an independent basis on which AVCO's motion for a preliminary injunction is denied.

### CONCLUSION

Based on the foregoing findings of fact and conclusions of law made pursuant to Fed. R.Civ.P. 65, AVCO's motion for a preliminary injunction is **denied**.

**SO ORDERED.**

---

**5.** The cases relied upon by AVCO are inapposite because they present circumstances where an agency has taken concrete enforcement action beyond investigation or made a final determination adverse to the complaining party. *See, e.g., Semaphore Entertainment Group Sports Corp. v. Gonzalez*, 919 F.Supp. 543, 548 (D.P.R.1996) (granting preliminary injunction where agency issued an immediately effective cease and desist order); *American Customs Brokers Co. v. United States Customs Serv.*, 637 F.Supp. 218, 219 (Ct. Int'l Trade 1986) (granting preliminary injunction where Customs Service discontinued plaintiff's brokerage privileges).