SECURITIES AND EXCHANGE COM-
MISSION, Petitioner-Appellee and
Cross-Appellant,

v.

BRIGADOON SCOTCH DISTRIBUTING
CO., et al., Respondents-Appellants
and Cross-Appellees.

Nos. 832–835, Dockets 73–1395 and
73–1444 to 73–1446.

United States Court of Appeals,
Second Circuit.

Argued March 30, 1973.

Decided June 7, 1973.

Walter P. North, Acting Gen. Counsel, S. E. C., Washington, D. C. (Michael A.

Macchiaroli, Atty., S. E. C., Washington, D. C., on the brief), for applicant-appellee and cross-appellant.

Bradley R. Brewer, New York City, for respondent-appellant Brigadoon Scotch Distributing Co.

Arthur J. Homans, New York City, for respondent-appellant Milbank Trading Co., Inc.

Irving A. Logue, Miller & Seeger, New York City, for respondent-appellant Leith-Moor Scotch Whiskey Co.

Before LUMBARD and FRIENDLY, Circuit Judges, and THOMSEN, District Judge.*

LUMBARD, Circuit Judge:

On January 26, 1972, the Securities and Exchange Commission ("SEC") applied to the district court for the Southern District of New York for an order pursuant to section 22(b) of the Securities Act of 1933, 15 U.S.C. §§ 77v(b), and section 21(c) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(c), directing compliance with subpoenas *duces tecum* issued to Brigadoon Scotch Distributing Co. ("Brigadoon"), Milbank Trading Co., Inc. ("Milbank"), and Leith-Moor Scotch Whisky Co. ("Leith-Moor"). The district court in two memorandum decisions and an order, which was entered on February 14, 1973, granted enforcement of the subpoenas in part and denied enforcement in part. Brigadoon, Milbank, Leith-Moor and the Commission have each appealed.

On March 13, 1973, a panel of this court ordered these appeals consolidated, granted a stay of the district court's order, and ordered the appeals to be heard on an expedited basis. For the reasons stated below, we affirm so much of the district court order as enforces the Commission's subpoenas, and reverse so much of the order as denies enforcement of the subpoenas.

* Of the District of Maryland, sitting by designation.

## I

Under section 20(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77t(a), and section 21(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u(a), the SEC is empowered to conduct investigations into possible violations of the federal securities laws. Pursuant to these provisions the Commission on February 4, 1971 issued an "Order Directing Private Investigation and Designating Officers to Take Testimony (the "Order").[1] The Order provided for the investigation of certain named persons, together with Brigadoon and Milbank, or "any other persons," to ascertain whether they had engaged or were about to engage in any acts or practices in connection with the offer and sale of whisky warehouse receipts in violation of sections 5(a), 5(c) and 17(a) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c) & 77q(a), and sections 10(b) and 15(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) & § 78o(a), and Rule 10b–5, 17 C.F.R. § 240.10b–5 thereunder. The Order also provided, in accordance with section 19(b) of the Securities Act, 15 U.S.C. § 77s(b), and section 21(b) of the Exchange Act, 15 U.S.C. § 78u(b), for the appointment of several members of the Commission staff as officers of the Commission with the power, among other things, to subpoena witnesses and require the production of any books, papers, correspondence, memoranda or other records deemed relevant and material to the investigation.

On April 14, 1971, pursuant to the Commission's Order a subpoena *duces tecum* was issued to Brigadoon Scotch Distributors, Ltd.,[2] which required Brigadoon to produce at the Commission's New York Regional Office the following eight categories of documents:

"1. A list of all persons with their addresses who have purchased whisky warehouse receipts or whisky from Brigadoon Scotch Distributors, Ltd. or with the aid of Brigadoon Scotch Distributors, Ltd.

2. A list of all persons with their addresses who have been employed by Brigadoon Scotch Distributors, Ltd. on either a salary or commission basis for the purpose of selling whisky warehouse receipts or whisky.

3. Copies of all literature sent by Brigadoon Scotch Distributors, Ltd. or its agents to prospective purchasers of whisky warehouse receipts or whisky.

4. Copies of all advertisements placed in the news media by Brigadoon Scotch Distributors, Ltd. or its agents in connection with the sale of whisky warehouse receipts or whisky.

---

1. The Order contains the following statement of the underlying basis for its issuance:

 Members of its staff have reported information to the Commission which tends to show that:

 A. During the period from approximately January 1, 1969 to the present, Brigadoon, Highland, Edinburgh and Milbank, their officers, directors, employees, representatives, franchisees and others while engaged in the business of a broker-dealer in securities have been and are offering to sell, selling and delivering after sale to members of the public certain securities namely whisky warehouse receipts.

 B. While engaged in the offer and sale of such securities, such persons made to purchasers and prospective purchasers untrue statements of material facts and omitted to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, concerning, among other things:

 (1) The availability of a competitive public market for the purchase and sale of such securities;

 (2) The commission or mark-up taken by the sellers of such securities;

 (3) The background of persons selling such securities;

 (4) The profitability of investments in such securities; and

 (5) The risks of investment in such securities.

2. The Commission's subpoena mistakenly refers to Brigadoon Scotch Distributing Co. as Brigadoon Scotch Distributors, Ltd.

5. A list of all parents, subsidiaries or affiliates of Brigadoon Scotch Distributors, Ltd.

6. A list of all persons with their addresses who are or have ever been officers, directors, partners or shareholders of Brigadoon Scotch Distributors, Ltd.

7. Copies of any financial statements, income statements or balance sheets reflecting Brigadoon Scotch Distributors, Ltd.'s financial condition for any period from January 1, 1968.

8. A list of all banks, factors, lending institutions or other corporations or persons which Brigadoon Scotch Distributors, Ltd. has used from January 1, 1968 to date in connection with the financing of the business of buying or selling whisky warehouse receipts or whisky, including but not limited to, places where funds have been deposited, loans obtained and transfer facilities used."

On April 14, 1971, a virtually identical subpoena was issued to Milbank Trading Company, Inc.; and on July 9, 1971, a subpoena, similar in all respects but one, was sent to Leith-Moor Scotch Whisky Co. The single difference in the Leith-Moor subpoena consisted of the omission of a request for the information contained in item (7) of the Brigadoon and Milbank subpoenas. Thus item (7) of the Leith-Moor subpoena corresponded to item (8) of the Brigadoon and Milbank subpoenas. The three companies responded with varying amounts of information, but none complied fully with the subpoenas. As a result, the Commission commenced these proceedings to compel compliance.

Judge Tenney, relying on our decision in SEC v. Wall Street Transcript Corp., 422 F.2d 1371 (2d Cir.), cert. denied, 398 U.S. 958, 90 S.Ct. 2170, 26 L.Ed.2d 542 (1970), held in a memorandum decision dated September 5, 1972, that the information called for in items (1) through (6) of the three subpoenas should be produced. As to items (7) and (8) of the Brigadoon and Milbank subpoenas and item (7) of the Leith-Moor subpoena, Judge Tenney found that the information required would be irrelevant unless the Commission could demonstrate that respondents below were selling securities. To avoid "an unnecessary imposition on Respondents" that "possibly would damage their business" he denied enforcement of this portion of the subpoenas with leave to the SEC to renew its application upon a showing that the documents involved were in fact securities subject to regulation by the Commission. In addition, to lessen the impact on respondents' business which might result from inquiries by the Commission directed to respondents' customers and employees based upon the information supplied in items (1) and (2) of the subpoenas, Judge Tenney also provided that appropriate protective provisions should be entered in the final order.

Motions to reargue were made by the three respondents below and the SEC. Judge Tenney, in a memorandum decision dated January 10, 1973, granted the motions and adhered to his prior decision. The final Order, of February 14, 1973, required *inter alia,* that the Commission "recite to each and every business entity and person from whom documents, information, or testimony is requested" a statement to the effect that the SEC is conducting an investigation under the "authority and supervision" of the district court to determine whether the interests in whisky sold by appellants are securities; that the Commission has made no determination yet as to coverage under the federal securities laws; that no charges are pending; and that appellants contend that they sell "commodities" not subject to SEC regulation.

On this appeal, Brigadoon, Milbank, and Leith-Moor assert that the district court relied improperly on the *Wall Street Transcript* case, *supra,* and that they should not be forced to produce the information called for in items (1) through (6) of the subpoenas. The SEC contends that, to the contrary, the sub-

poenas should have been enforced in their entirety, including items (7) and (8) of the Brigadoon and Milbank subpoenas and item (7) of the Leith-Moor subpoena, and that the Commission's investigators should not be required to recite the information contained in the protective provisions contained in the order entered below. We will consider each of these contentions.

## II

Brigadoon, Milbank, and Leith-Moor have maintained throughout these proceedings that what they sell are documents of title to specific casks of scotch whisky aging in government bonded warehouses in Scotland, and not whisky warehouse receipts, as the Commission apparently maintains.[3] These appellants[4] contend that the SEC has no regulatory power over them because Congress in amending the Securities Act in 1934 to eliminate the phrase "certificate[s] of interest in property, tangible or intangible" from the definition of a "security" contained in section 2(1) of the Securities Act, 15 U.S.C. § 77b(1), intended to eliminate from coverage under the federal securities laws documents of title such as they sell. According to appellants the current definition of a security, which includes the term "investment contract," cannot possibly

be construed to cover either negotiable warehouse receipts (which they claim they do not sell) or non-negotiable documents of title (which they claim they do sell). Appellants argue, therefore, that before the Commission can subpoena information from them, the Commission must demonstrate that there is "reasonable, factual cause for a belief that the sales made by these three [appellants] may constitute the sale of 'securities' or 'investment contracts' within the meaning of Section 2(1) of the Securities Act."[5] In particular, they urge that the district court must make some initial determination as to statutory coverage and that the fourth amendment's "probable cause" requirement demands that the Commission show enough facts to demonstrate that "reasonable grounds" exist for issuing subpoenas to appellants and compelling the production of documents.[6]

Appellants raise serious questions about whether their activities are subject to regulation by the SEC. Should the Commission seek to exercise regulatory control over appellants' business affairs at some future date, whether by means of a section 5 injunctive suit or otherwise, appellants will be entitled to a full hearing on their contentions. However, it has long been settled that such issues are not to be decided in subpoena enforcement actions. The

---

3. It seems that at least up until July 6, 1967, the SEC took the position that certain ownership interests in *whisky* similar to those that respondents allege that they sell were not securities. See letter dated July 6, 1967, from Arthur F. Mathews, Chief, Branch of Criminal Reference and Special Proceedings, Division of Trading and Markets, SEC (by Peter J. Adolph, attorney) to Allen E. Bachman, Executive Vice-President, National Better Business Bureau, Inc. On the other hand, Securities Act Release No. 5018 (Nov. 4, 1969) indicates that it is also the Securities and Exchange Commission's position that *whisky warehouse receipts* may indeed be securities within the meaning of the federal securities laws.

4. Although Brigadoon, Milbank and Leith-Moor are not only appellants in this action but also cross-appellees, for the sake of clarity they will be referred to solely

as "appellants," while the Securities and Exchange Commission will be referred to by name as the SEC or the Commission.

5. Joint brief of respondents-appellants at 51.

6. Appellants also argue that the term "investment contract" contained in section 2(1) of the Securities Act, 15 U.S.C. § 77b(1), is void for vagueness. See Connally v. General Const. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). In light of the many Supreme Court decisions defining and applying the term, e. g., S.E.C. v. C. M. Joiner Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943); S.E.C. v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); S.E.C. v. United Benefit Life Ins. Co., 387 U.S. 202, 87 S.Ct. 1557, 18 L.Ed.2d 673 (1967), we find such a position to be untenable.

Commission must be free without undue interference or delay to conduct an investigation which will adequately develop a factual basis for a determination as to whether particular activities come within the Commission's regulatory authority.

In 1946 in Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946), a case involving the administration of the Fair Labor Standards Act, 52 Stat. 1060, the Supreme Court stated what has since become the rule for interpreting regulatory statutes; namely, that it is for the agency rather than the district courts to determine in the first instance the question of coverage in the course of the preliminary investigation into possible violations. 327 U.S. at 214, 66 S.Ct. at 508. See Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1943). As to what showing of coverage, if any, an agency must make to secure judicial enforcement of a subpoena in light of the fourth amendment, the Court in *Oklahoma Press* stated that "any possible constitutional requirement of that sort was satisfied by the Administrator's showing in this case, including not only the allegations concerning coverage, but also that he was proceeding with his investigation in accordance with the mandate of Congress and that the records sought were relevant to that purpose." 327 U.S. at 215–216, 66 S.Ct. at 509. The Court said of the requirement of "probable cause" as applied to subpoena enforcement actions:

> The requirement of "probable cause, supported by oath or affirmation," literally applicable in the case of a warrant, is satisfied in that of an order for production by the court's determination that the investigation is authorized by Congress, is for a purpose Congress can order, and the documents sought are relevant to the inquiry. 327 U.S. at 209, 66 S.Ct. at 506.

Subsequently, the Supreme Court on several occasions has reaffirmed the doctrine enunciated in *Oklahoma Press.* See United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950); F. T. C. v. Crafts, 355 U.S. 9, 78 S.Ct. 33, 2 L.Ed.2d 23 (1957); United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). In United States v. Morton Salt Co., *supra,* the Court indicated that even if the agency request is motivated by "nothing more than official curiosity," the subpoena is enforceable because agencies have a legitimate interest in seeing that the law and the public interest are maintained —assuming, of course, that the agency is acting within its authority and the information requested is relevant to the inquiry. 338 U.S. at 652, 70 S.Ct. at 369.

Summarizing this area of the law, this court stated in 1970 in SEC v. Wall Street Transcript Corp., 422 F.2d 1371, 1375 (2d Cir.), cert. denied, 398 U.S. 958, 90 S.Ct. 2170, 26 L.Ed.2d 542 (1970), which was relied on by the district court:

> [I]t has long been established that the question of the inclusion of a particular person or entity within the coverage of a regulatory statute is generally for initial determination by an agency, subject to review on direct appeal, rather than for a district court whose jurisdiction is invoked to enforce an administrative subpoena. So long as an agency establishes that an investigation "will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within [its] possession, and that the administrative steps required * * * have been followed," no showing of probable cause need be made to the district court unless a statute indicates otherwise. United States v. Powell, 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964); FTC v. Crafts, 355 U.S. 9, 78 S.Ct. 33, 2 L.Ed.2d 23 (1957); Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614,

166 A.L.R. 531 (1946); Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 63 S.Ct. 339, 87 L.Ed. 424 (1948); 1 Davis, Administrative Law, § 3.12 (1958).

■ It is apparent from the SEC's Order in this case that its investigation has the legitimate purpose of determining whether the whisky or warehouse receipts sold by appellants, in the context of the representations or understandings that may surround their sale, are securities covered by the securities acts, and, if so, of determining whether any securities violations have occurred. The Securities Act and the Exchange Act, as indicated above, clearly authorize such investigations, cf. *Oklahoma Press Pub. Co., supra,* 327 U.S. at 210 n. 47, 66 S.Ct. at 506 n. 47, and the information sought through the subpoenas is obviously relevant to the inquiry. There has been no suggestion that the SEC already has the information; nor have appellants raised any substantial claim that the SEC has failed to follow the appropriate administrative steps set out in the statute.[7]

However, appellants argue that the decision of the Supreme Court in See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), a case decided three years prior to *Wall Street Transcript, supra,* requires a factual showing by an agency of "reasonable grounds" to issue subpoenas, not merely a demonstration that the inquiry is legitimate under the governing statute and that the documents requested are relevant to the inquiry. We do not agree. In See v. Seattle, *supra,* the Court did nothing to change the well-established principles associated with the judicial enforcement of agency subpoenas. The owner of a commercial warehouse was seeking reversal of his conviction for refusing "to permit a representative of the City of Seattle Fire Department to enter and inspect [his warehouse] without a warrant and without probable cause to believe that a violation of any municipal ordinance existed therein." 387 U.S. at 541, 87 S.Ct. at 1738. The Court reversed, holding that the fourth amendment requires an administrative agency to obtain a warrant before searching commercial premises.

In *See,* there was governmental entry onto private property, action that is markedly different from issuing an administrative subpoena for the production of books and records, which has been termed a "constructive" search, *Oklahoma Press Pub. Co., supra,* 327 U.S. at 202, 66 S.Ct. at 502, and which certainly involves a minimal invasion of privacy. Nevertheless, in *See* the Court referred approvingly to the standards associated

7. Appellants do assert that the subpoenas issued to them do not stay within the investigative limits set out in the SEC's order. The order calls for the investigation of the offer and sale of whisky warehouse receipts; the subpoenas ask for information in connection with appellants' sales of "whisky warehouse receipts or *whisky*" (emphasis added). Although it is true that the investigative order does not use the term "whiskey," any claim that the staff exceeded its authority in issuing the subpoenas cannot withstand analysis. The order itself specifically names appellants Brigadoon and Milbank and authorizes an inquiry into whether they have been selling securities, namely whisky warehouse receipts, in violation of the securities laws. Appellants have taken the position that they sell titles to specific, identifiable casks of scotch whisky which are neither whisky warehouse

receipts nor securities. Nevertheless, since appellants do not contend that they sell more than one type of ownership interest in whisky, it is perfectly apparent that the current investigation, including the three subpoenas at issue here, concerns the same activities specified in the Commission's order. A minor difference in nomenclature will not suffice to place the actions of the staff beyond its investigative authority.

What appellants would have us decide, under the guise of determining whether the subpoenas were within the authority conferred by the Commission on the staff, is whether respondents sell whisky or whisky warehouse receipts. As stated above, that determination, which concerns the critical issue of whether respondents' activities come within the coverage of the securities laws, is one that must be made initially by the SEC, not the court.

with the judical enforcement of administrative subpoenas as evidence that a warrant requirement would impose only a "necessary and a tolerable limitation on the right to enter upon and inspect commercial premises." 387 U.S. at 544, 87 S.Ct. at 1740. In a footnote the Court cited several cases, including Oklahoma Press Pub. Co. v. Walling, *supra,* and United States v. Morton Salt Co., *supra,* which stand for the proposition that for purposes of the fourth amendment's probable cause requirement it is sufficient if an agency shows that an investigation is within its authority and the materials requested are reasonably relevant. Thus, it is apparent that in See v. Seattle, *supra,* the Court in no way modified its previous holdings that an agency need not demonstrate facts showing either the probability of coverage under the statute or the likelihood of violation of the statute to secure enforcement of a subpoena.

Accordingly, we affirm that portion of the district court's order which requires appellants to produce items (1) through (6) listed in the subpoenas.

### III

■ The SEC contends that it is also entitled to have the remainder of its subpoenas (items (7) and (8) of the Brigadoon and Milbank subpoenas and item (7) of Leith-Moor subpoenas) enforced on the same showing that the information requested is relevant to a legitimate aim of the investigation. We agree. Absent evidence of abuse by the Commission, United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), it is entitled simultaneously to conduct a full inquiry into both potential coverage and potential violations. In aid of such investigation the Commission may issue subpoenas which will produce information on both issues. As we said in Newmark & Co. v. Wirtz, 330 F.2d 576, 578 (2d Cir. 1964):

> Although it might well save time and expense for all concerned if the Administrator first examined such records as were relevant to coverage and then proceeded beyond that only if convinced that appellant were covered, the Oklahoma Press decision makes it plain that the course of the investigation is for the Administrator to determine. If appellant believes that the nature of its operations is not such as to render it subject to the Act, it can properly litigate that issue if and when the Administrator attempts to enforce the Act's substantive requirements against it after the completion of the administrative investigation.

■ That the materials requested in items (7) and (8) of the Brigadoon and Milbank subpoenas are relevant to the issue of possible violations of the securities laws is indisputable. Copies of the companies' financial statements and a list of financial institutions involved in the "financing of the business of buying and selling whisky warehouse receipts or whisky" will assist the Commission in determining, for example, whether appellants have violated either the financial responsibility [8] or anti-fraud [9] provisions of the federal securities laws. Barring other compelling considerations, then, these portions of the subpoenas must also be enforced.

The district court did suggest in support of its denial of enforcement of items (7) and (8) of the Brigadoon and Milbank subpoenas and item (7) of the Leith-Moor subpoena that production of the material requested "possibly would damage" appellants' business. It is unclear from the memorandum decisions of

---

8. Section 15(c)(3) of the Securities Exchange Act, 15 U.S.C. § 78o(c)(3), and Rules 15c3–1 through 15c3–3 thereunder, 17 CFR 240.15c3–1 through 240.15c3–3.

9. Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), and sections 10(b) and 15(c)(1) and (2) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78o(c)(1) & (2), and Rules 10b–5 and 15c1–1 through 15c2–11 thereunder, 17 CFR 240.10b–5 and 240.15c1–1 through 240.15c2–11.

the district court to what extent it relied on this factor in refusing to order production of the requested materials. However, since appellants have been unable to show specifically how production of this information will result in harm to their business, it is apparent that the district court's refusal to enforce these items cannot be upheld on this ground alone.

 It is true that while the SEC is entitled to great freedom in conducting its investigations, it is not at liberty to act unreasonably, and in appropriate circumstances the court may inquire into the reasons for an investigation and into its effects. For example, if a subpoena were not issued in good faith but to harass or pressure the subject of an investigation, or for any other improper purpose, then the court would be bound not to enforce the subpoena as issued. United States v. Powell, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). Likewise, if it could be demonstrated that compliance with an agency subpoena would be *unnecessarily* burdensome, some limitation of the materials required would be warranted. But the burden of showing that an agency subpoena is unreasonable remains with the respondent, see United States v. Powell, *supra,* at 58, 85 S.Ct. at 255; United States v. Donaldson, 400 U.S. 517, 527, 91 91 S.Ct. 534, 540, 27 L.Ed.2d 580 (1971), and where, as here, the agency inquiry is authorized by law and the materials sought are relevant to the inquiry, that burden is not easily met. *Cf.* Adams v. F. T. C., 296 F.2d 861 (8th Cir. 1961), cert. denied, 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83 (1962). Thus the mere suggestion by appellants of possible damage to their business activities is not sufficient to block an authorized inquiry into relevant matters. See Newmark & Co. v. Wirtz, 330 F.2d 576, 578 (2d Cir. 1964).

 The Commission in its cross-appeal also asks that the order of the district court be modified by striking therefrom any requirement that there be given to every person from whom documents or testimony is requested the following statement:

"An inquiry is being conducted by the Securities and Exchange Commission relative to the offer and sale of Scotch whisky and/or whisky warehouse receipts as an investment for the purpose of determining whether or not the interests in whisky being sold are 'securities' subject to regulation by the SEC. This proceeding is only an inquiry and is being conducted under the authority and supervision of a Federal District Court. No charge of violation of the federal securities laws has been made against the party concerning whom documents or information is being requested. The SEC has made no determination as to whether such interests in whisky are, or are not, 'securities'; such determination will ultimately be made by the Court. [Name of appropriate Respondent] contends that the whisky interests which it sells are 'commodities' and are not 'securities' subject to regulation by the Commission".

We see no good reason to encumber the early stages of the Commission's investigation with a requirement that each person from whom information is sought be advised of the nature and status of the inquiry and the contentions of the parties. To do so would be merely to invite controversy and litigation over the contents of the statement to be given. Furthermore, where an agency investigation is rapidly developing and changing, it would be difficult, if not impossible, accurately and completely to summarize the current status of the proceedings. Every person doing business and every investor knows that government agencies conduct investigations for a variety of reasons, and most of them feel the duty to respond to a proper inquiry. As for those whose practices are investigated, it is a necessary hazard of doing business to be the subject of inquiry by a government regulatory agency. Thus, we see no sound basis for im-

posing on the Commission the requirement of reciting such a statement.[10]

Accordingly, we affirm so much of the district court's order as granted enforcement of items (1) through (6) of the Brigadoon, Milbank, and Leith-Moor subpoenas.

We reverse the order of the district court insofar as it denies enforcement to items (7) and (8) of the Brigadoon and Milbank subpoenas and item (7) of the Leith-Moor subpoena, and imposes a requirement that the Commission supply certain specified cautionary material to those subpoenaed.

10. In addition, it must be noted that the protective provisions inserted by the district court in this case are in certain respects inaccurate and incomplete. For instance, the first sentence states that the investigation is being conducted to determine if the interests in whisky that are being sold are "securities" subject to SEC regulation. In fact, as has already been noted, the investigation is for a dual purpose: first, to determine if securities are involved and, second, to ferret out possible federal securities law violations. The following sentence further compounds the misleading quality of the notice by stating that the investigation "is being conducted under the authority and supervision of the Federal District Court." Actually, the investigation is completely under the supervision and control of the SEC and the district court's role is limited to enforcing subpoenas issued during the course of the inquiry.