**Alan H. GOLD, Petitioner,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

**No. 94–1915.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 6, 1994.

Decided Feb. 15, 1995.

Dana A. Parisi, Neal H. Levin (argued), Levin & Associates, Chicago, IL, for petitioner.

Eric Summergrad, Brian F. McNally (argued), Jonathan G. Katz, Angel Lang, S.E.C., Office of the Gen. Counsel, Washington, DC, Simon Swidler, New York Stock Exchange, Inc. New York City, for respondent.

Before COFFEY, MANION, and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Petitioner Alan H. Gold seeks judicial review of an order of the Securities and Exchange Commission ("SEC") affirming disciplinary action taken against him by the New York Stock Exchange ("NYSE"). The issue raised in this appeal is whether Gold, who was formerly associated with a member firm of the NYSE,[1] had a Fifth Amendment due process right to actual notice, rather than constructive notice, that the NYSE was investigating his trading practices and thus retaining jurisdiction over him following his termination from the member firm. We affirm.

## I. FACTUAL BACKGROUND

From August 1986 through June 1988, Gold was employed as a registered associate with Prudential–Bache Securities, Inc., a member firm of the NYSE. In June 1988, Prudential–Bache discharged Gold for suspected violations of NYSE rules. In August 1988, Prudential–Bache filed notice of Gold's termination with the Central Registration Depository ("CRD"),[2] the repository of current registration data used by the NYSE and its member firms.[3] The notice of termination listed two customer complaints as the reason for Gold's discharge. Specifically, in January 1988, Gold's customers Goeffrey and Katherine Pinkus filed a demand for arbitration with the American Arbitration Association against Gold alleging unauthorized trading, failure to follow orders, and mishandling of their account. In July 1988, Gold's customer Susan Kirschner sent a letter of complaint to Prudential–Bache alleging improper conduct and breach of fiduciary duty by Gold. From June 1988 through August 1988, Gold was employed by another NYSE member firm, Blunt Ellis & Loewi. The NYSE, through the CRD, received notice of Gold's termination from Blunt Ellis & Loewi in September 1988. After leaving Blunt Ellis &

---

1. The NYSE designates as "member firms" those firms listed on its membership rolls which agree to participate in its regulatory procedures. All other firms are designated as "non-member firms."

2. The CRD is a national registration system operated by the National Association of Securities Dealers, Inc., under an agreement with the North American Securities Administrators Association. The CRD is the main repository for current registrant data, including the names and addresses of current and former member firm employees. Receipt of updated information by the CRD is deemed receipt by the NYSE.

3. Each member firm of the NYSE must file with the CRD a Form U–5, Uniform Termination Notice for Securities Industry Registration, for each employee who terminates employment, either voluntarily or involuntarily. Any person wishing to register as an associate of a NYSE member firm must file a Form U–4, Uniform Application for Securities Industry Registration or Transfer.

Loewi, Gold was not associated with any NYSE member firm.

Shortly thereafter, the NYSE initiated an investigation into Gold's trading activities during his employment with Prudential–Bache from August 1986 through June 1988. In February 1989, the NYSE obtained Gold's last known address from the CRD as being located on Lake Shore Drive in Chicago, Illinois, and forwarded a letter to Gold by certified mail advising him that he was the subject of a NYSE investigation. The letter stated:

> This letter is to give you notice under Exchange Rule 477 (copy enclosed), that the Exchange is investigating the possibility that while you were employed by [Prudential–Bache] you may have engaged in unsuitable, unauthorized and excessive options trading and made misrepresentations in connection with the account of Susan Kirschner and engaged in unauthorized trading and failed to follow the customer's orders in connection with the account of Geoffrey and Katherine Pinkus.

The letter directed Gold to submit a detailed written explanation of his trading in these two accounts to the NYSE's Division of Enforcement. The NYSE sent a duplicate copy of this letter to Gold at the same address via first class mail. In early March 1989, both letters were returned to the NYSE undelivered and stamped "moved, left no address" and "unable to forward." The NYSE inquired at the Chicago Post Office whether Gold had filed a change of address form. The Post Office confirmed that Gold had moved from the Lake Shore Drive address and had left no forwarding address. Upon receiving this notice from the Post Office, the NYSE suspended its investigation. In April 1990, the NYSE again asked the CRD for Gold's current address, and was advised by the CRD that it had recently received a change of address notice from Gold. The CRD's updated records listed Gold's current address in Skokie, Illinois and noted that he was again employed in the securities industry, this time with a NYSE non-member firm. On May 1, 1990, the NYSE notified Gold by letter at the Skokie, Illinois address that it was resuming its investigation into his trading activities during the period of his employment with Prudential–Bache. Attached to this letter was a copy of the February 1989 letter notifying Gold of the investigation.

In August 1991, after completing its investigation, the NYSE's Division of Enforcement formally charged Gold with violating five NYSE rules. Gold did not contest two of the charges against him, but denied the remaining three charges and challenged the jurisdiction of the NYSE, asserting that its Division of Enforcement had failed to serve adequate and timely notice on Gold under NYSE Rule 477, which required the service of written notice of the NYSE's investigation within one year following the NYSE's receipt of written notice of Gold's termination.[4] A unanimous NYSE Hearing Panel rejected Gold's jurisdictional argument and found him responsible for the rules violations he admitted: (1) effecting an option transaction in a customer's account before that account was approved for options trading, in violation of

4. Rule 477 provides:

If, prior to termination, or during the period of one year immediately following the receipt by the Exchange of written notice of the termination, of a person's [association with a member firm], the Exchange serves (as provided in paragraph (d) of Rule 476) written notice on such person that it is making inquiry into, or serves a Charge Memorandum on such person with respect to, any matter or matters occurring prior to the termination of such person's [association with a member firm] ... the Exchange may thereafter require such person to comply with any requests of the Exchange to appear, testify, submit books, records, papers, or tangible objects, respond to written requests and attend hearings....

Service must be provided in accordance with Rule 476, which specifically permits constructive notice rather than actual notice:

> Service [of the notice] shall be deemed effective by personal service ... or by leaving same either at the respondent's last known office address during business hours or respondent's last place of residence as reflected in Exchange records, or upon mailing same to the respondent at the aforesaid office address or place of residence.

Rule 477 permits the NYSE to retain jurisdiction over a former employee of a member firm until the NYSE completes its investigation into the matters identified in the notice or Charge Memorandum, determines the penalty, if any, to be imposed, and carries out any penalty imposed.

NYSE Rule 721(a), and (2) agreeing to share losses in a customer's account, in violation of NYSE Rule 352(c).[5] The panel censured Gold and imposed a one-month suspension of his trading privileges.[6]

Gold appealed the panel's order to the NYSE's Board of Directors, which affirmed the panel's decision without comment. Gold subsequently appealed to the SEC, which, after conducting a *de novo* review, upheld the NYSE's findings and disciplinary action. The SEC concluded that the NYSE's mailing of notice of its investigation to Gold's last known residence address within one year of his termination from a NYSE member firm was sufficient to retain jurisdiction over him.

## II. DISCUSSION

 The SEC is the federal agency charged with the regulation of the securities industry, and, because the SEC lacks the resources to police the entire industry, it relies on industry members to promote compliance with the securities laws and regulations and to pursue enforcement actions. *Schellenbach v. Securities and Exchange Commission,* 989 F.2d 907, 909 (7th Cir. 1993); *Mister Discount Stockbrokers, Inc. v. Securities and Exchange Commission,* 768 F.2d 875, 876 (7th Cir.1985). The NYSE is a national securities exchange registered with the SEC under Section 6 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78f. As a registered exchange, the NYSE is responsible for enforcing compliance with the federal securities laws, including the associated rules and regulations, as well as its own rules. 15 U.S.C. §§ 78f(b)(1), 78s(g). The

NYSE must "provide a fair procedure for the disciplining of members and persons associated with members...." 15 U.S.C. § 78f(b)(7). The NYSE's disciplinary process empowers the Division of Enforcement to file charges of NYSE rules violations, conduct hearings, make findings, and impose penalties. The NYSE's Board of Directors reviews orders of the Division of Enforcement and any final disciplinary sanction imposed by the Board of Directors is subject to *de novo* review by the SEC. 15 U.S.C. §§ 78s(d)(2), 78s(e)(1). This court does not directly review the actions of the NYSE since the NYSE's disciplinary orders are subject to a full and independent review by the SEC as to the facts as well as the law. *Shultz v. Securities and Exchange Commission,* 614 F.2d 561, 568 (7th Cir.1980). Accordingly, our consideration of alleged errors in NYSE proceedings is limited; we will reverse an SEC order because of errors committed by the NYSE " 'only if and to the extent that [the NYSE's errors] infected the Commission's action by leading to error on its part.' " *Id.* (quoting *R.H. Johnson & Co. v. Securities and Exchange Commission,* 198 F.2d 690, 695 (2d Cir.), *cert. denied,* 344 U.S. 855, 73 S.Ct. 94, 97 L.Ed. 664 (1952)). Our review of the proceedings before the SEC is not so limited; this court may overturn an SEC sanctions order if it is unwarranted in law or without justification in fact. *Nowicki v. United States,* 536 F.2d 1171, 1178 (7th Cir.1976); *Hateley v. Securities and Exchange Commission,* 8 F.3d 653, 655 (9th Cir.1993).

Gold argues that he had a Fifth Amendment due process right to actual notice, rath-

---

**5.** The Hearing Panel exonerated Gold of the remaining three charges, which included (1) recommending options transactions to a customer without a reasonable basis for believing that customer could evaluate or bear the risks of the transaction; (2) engaging in conduct inconsistent with just and equitable principles of trade by, without understanding an options strategy, recommending that strategy to a customer and causing trades to be executed based on that strategy; and (3) failing to comply with NYSE requests to return attested transcripts.

**6.** Gold was barred from "membership, allied membership, approved person status and from employment or association in any capacity with any member or member organization" for a peri-

od of one month. Disciplinary actions taken by the NYSE have far-reaching consequences. Notice of a person's censure and any membership suspension is released to the news media, distributed to member firms, and listed by the CRD. Any disciplinary sanction becomes part of a person's permanent record. A sanctioned individual must report the NYSE's action to all future employers within the securities industry. Members of the public, including prospective customers, have access to information on the NYSE's disciplinary actions through the Exchange itself, the CRD, state regulatory agencies, as well as a toll-free telephone number operated by the National Association of Securities Dealers, Inc.

er than constructive notice, that the NYSE was exercising jurisdiction over him to investigate his conduct while employed by a member firm. Gold concedes that the NYSE followed its own rules in providing notice of its investigation, but he asserts that the constructive notice allowed by Rule 477[7] is constitutionally inadequate because it authorizes the NYSE to exercise jurisdiction over a former employee of a member firm, not only to investigate unlawful conduct, but to adjudicate legal rights. We disagree.

■ As a preliminary matter, we are faced with the question of whether the NYSE, a private organization regulated by the federal government, is a governmental actor whose jurisdictional rules and enforcement actions are subject to due process analysis. Gold's due process argument presumes that the NYSE, when it acts to enforce its own rules and regulations as well as the federal securities laws, should be regarded as an agent of the SEC bound by constitutional due process requirements. The SEC avoids this question by arguing that no due process violation occurred in this case.

■ This court has expressed doubt about the proposition that the comprehensive regulation of securities exchanges by the federal government would turn those exchanges into government actors. In *Bernstein v. Lind–Waldock & Co.*, 738 F.2d 179 (7th Cir.1984), we said:

> The argument for treating a securities or commodity exchange as an arm of the federal government is that federal law imposes on the exchange a duty of policing its members that makes the exchange in effect a law-enforcement agent of the government.... But as Judge Friendly pointed out in [*United States v. Solomon*, 509 F.2d 863, 869 (2d Cir.1975) ], the agency analogy is upside down. The exchange is the principal rather than the agent; the purpose of the federal law is to strengthen the power and responsibility of the ex-

change in performing a policing function that preexisted federal regulation.

*Id.* at 186 (dicta). Heavy governmental regulation, by itself, does not make a private organization into a government actor, for "that would bring under the Fifth Amendment much of the private sector, ranging from hospitals to railroads." *Id.*

Gold's assertion that the NYSE's disciplinary actions against him were state actions subject to due process scrutiny was largely undeveloped in both Gold's written briefs and oral argument. As noted above, the SEC limited its argument to the alleged due process violation and did not discuss the government action question at all. Because neither party to this dispute presented this question squarely to the court, we consider it waived on appeal. *See Luddington v. Indiana Bell Telephone Co.*, 966 F.2d 225, 230 (7th Cir. 1992), *cert. denied*, — U.S. ——, 114 S.Ct. 1641, 128 L.Ed.2d 362 (1994) (declining to consider undeveloped issues on appeal). Accordingly, we confine our analysis to a determination of whether the SEC provided "a fair procedure" for disciplining Gold pursuant to 15 U.S.C. § 78(b)(7). This statutory fairness requirement is closely related to the fairness requirements derived from the Fifth Amendment's Due Process Clause. We have therefore assessed the fairness of the NYSE's jurisdictional rules and enforcement action against Gold by relying on traditional due process principles.

■ Due process does not require notice, either actual or constructive, of an administrative investigation into possible violations of the securities laws.[8] *See Securities and Exchange Commission v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742, 104 S.Ct. 2720, 2725, 81 L.Ed.2d 615 (1984) ("the Due Process Clause ... is [not] offended when a federal administrative agency, without notifying a person under investigation, uses its subpoena power to gather evidence adverse to him. The Due Process Clause is not

---

7. Rule 477 authorizes the NYSE to retain jurisdiction over a member, member organization, allied member, approved person, or registered or non-registered employee of a member or member organization by mailing notice to that person's last known office or residence address.

8. We note that Gold has not challenged the NYSE's authority to *investigate* his activities by providing constructive notice; his challenge focuses on the NYSE's authority to *adjudicate* his legal rights.

implicated under such circumstances because an administrative investigation adjudicates no legal rights....").

> [W]hen governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used.

*Hannah v. Larche,* 363 U.S. 420, 442, 80 S.Ct. 1502, 1514–15, 4 L.Ed.2d 1307 (1960). The Supreme Court has noted with approval SEC rules which provide that "parties to adjudicative proceedings shall be given detailed notice of the matters to be determined," but make such notice "specifically inapplicable to investigations" in order to "prevent the sterilization of investigations by burdening them with trial-like procedures." *Id.* at 446–47, 80 S.Ct. at 1517–18. Thus, we are of the opinion that due process does not require the NYSE to provide a former employee (as defined in footnote 7) of a member firm with actual notice of its investigation into that former employee's conduct.

Our inquiry does not end here. The NYSE's constructive notice to Gold did not simply serve to notify him of the investigation. The constructive notice allowed the NYSE to retain jurisdiction over Gold to investigate, and later adjudicate, his alleged violations of NYSE rules. Of particular significance is the fact that the NYSE did not *establish* jurisdiction over Gold without his consent. By registering as an associate with a member firm of the NYSE, Gold consented to submit to the jurisdiction of the NYSE and agreed to abide by all its rules and regulations. Gold signed a Form U–4, Uniform Application for Securities Industry Registration or Transfer, which stated:

> I hereby apply for registration with the organizations and states indicated in Item 10 as may be amended from time to time and, in consideration of such organizations and states reserving and considering my application, *I submit myself to the jurisdiction of such states and organizations* and hereby certify that I agree to abide by, comply with, and adhere to all the provisions, conditions and covenants of the statutes, constitutions, certificates of incorporation, by-laws and rules and regulations of the states and organizations as they are and may be adopted, changed or amended from time to time, and *I agree to comply with, be subject to and abide by all such requirements and all rulings, orders, directives and decisions of, and penalties, prohibitions and limitations imposed by such states and organizations,* subject to right of appeal as provided by law; and I agree that any decision of such states and organizations as to the results of any examination(s) that I may be required to pass will be accepted by me as final.

(Emphasis added.) Gold never contested the validity of this agreement.

■ Registered brokers and associates are presumed as a matter of law to have knowledge of the published rules of the securities exchange. *Carter v. Securities and Exchange Commission,* 726 F.2d 472, 474 (9th Cir.1983) (*per curiam*); *see also Sloan v. New York Stock Exchange, Inc.,* 489 F.2d 1, 3 (2d Cir.1973) ("when appellants became members of the [NYSE] they consented, quite knowingly and intelligently to [its] disciplinary procedures...."). NYSE Rule 476 authorizes the NYSE to discipline its member firms and their employees. Rule 477 permits the NYSE to retain jurisdiction over an individual who is no longer associated with a member firm. The NYSE may retain jurisdiction over a former member firm employee only if, within one year after the NYSE receives notice of the employee's termination of employment with the member firm for any reason, the NYSE commences an investigation and serves notice, either actual or constructive, on that former employee that it is investigating matters which occurred while he or she was associated with a member of the NYSE. As explained in the SEC's opinion affirming the disciplinary action taken against Gold by the NYSE, "[t]his mechanism [constructive notice] enables the NYSE to prevent the employee from escaping the

consequences of his misconduct by leaving the member firm."

Gold acknowledged the NYSE's authority to retain its jurisdiction over him beyond his employment with a member firm (*see supra* n. 4) when he registered as an associate with a member firm and voluntarily subjected himself to the NYSE's rules. As a registered associate, Gold was presumed as a matter of law to have knowledge of all of the NYSE's rules, including the rule that it could retain jurisdiction over him by mailing a letter to his last known business or residence address within one year of his termination from a member firm. The CRD's records reflect that Gold was no longer employed by a NYSE member firm as of September 1988. The NYSE commenced its investigation of Gold's trading practices in late 1988. The NYSE mailed notice of its investigation of Gold's trading activities to his last known residence address in February 1989, within a year of his termination from a member firm. The NYSE suspended its investigation of Gold until it was able to locate him in April 1990, when the NYSE received his updated address from the CRD. Gold received actual notice of the NYSE's resumed investigation in May 1990, and he received actual notice of the charges against him in August 1991, when the NYSE's Division of Enforcement served him with a Charge Memorandum. He participated in a full evidentiary hearing before a NYSE Hearing Panel at which he was represented by counsel. The Hearing Panel dismissed the three charges Gold denied. *See supra* n. 5.

■ We hold that the NYSE's retention of jurisdiction to investigate and later adjudicate Gold's alleged rules violations through constructive notice was proper and constitutionally adequate. " 'Traditional notions of fair play and substantial justice' " are not offended where an individual has consented to an administrative agency's exercise of continued jurisdiction through the service of constructive notice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). Due process requires no more.

## III. CONCLUSION

The SEC's order affirming disciplinary action taken against Gold by the NYSE is

AFFIRMED.