**RNR ENTERPRISES, INC. and Robert J. Carlo, Respondents,**

**Richard K. Wells, Respondent–Appellant,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Applicant–Appellee.**

No. 1318, Docket 96–6237.

United States Court of Appeals, Second Circuit.

Argued April 23, 1997.

Decided May 22, 1997.

Ordered Published Aug. 22, 1997.

Richard K. Wells, New York City, pro se.

Melinda Hardy, Washington, DC (Securities and Exchange Commission), for Applicant–Appellee.

Before: OAKES, ALTIMARI and JACOBS, Circuit Judges.

JACOBS, Circuit Judge: [1]

Respondent-appellant Richard K. Wells challenges the enforceability of an administrative subpoena served on him and a company he controls pursuant to a Formal Order of the SEC that opened an investigation into a particular industry, but did not name either Wells or his company.

In July 1996, the SEC moved in the Southern District of New York for an order enforcing previously issued subpoenas against Wells; Robert J. Carlo; and RNR Enterprises, Inc. ("RNR"). A subpoena *ad testificandum* dated January 30, 1996 directed that Wells appear to give testimony in the *Matter of Certain Sales of Unregistered Securities of Telecommunications Technology Ventures, HO–2907*, an investigation "pursuant to a formal order issued by the Securities and Exchange Commission under the authority of Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934" (the "Formal Order").

The Formal Order identified in the subpoena was issued by the SEC in July 1994. In relevant part, the Formal Order recited that information known to the SEC tended to show the following things:

- that there had been possible violations of federal securities laws in connection with the offering and sale of securities in "ventures that acquire licenses for, or develop or operate transmission facilities of, or otherwise concern, Specialized Mobile Radio … and similar telecommunications technologies that are subject to licensing by the United States Federal Communications Commission."

- specifically, that from 1988 to the present, certain persons had offered such "Telecommunications Technology Securities" without filing the requisite registration statements with the SEC; obtained money or property by means of untrue statements or misleading omissions of material fact, made in connection with the offer, purchase or sale of such securities; or effected transactions in such securities without first registering as brokers or dealers.

The Formal Order directed that "a private investigation be conducted to determine whether any persons have engaged, are engaged, or are about to engage, in any of the [alleged] acts, practices, or courses of business, or in any acts, practices, or courses of business of similar purport or object," and it authorized two designated SEC officers to (among other things) "subpoena witnesses and compel their attendance" for the purposes of the investigation. In January 1996, the SEC issued a Supplemental Order Designating Additional Officers to Take Testimony pursuant to the Formal Order.

In support of its enforcement motion, the SEC filed a declaration written by an SEC attorney, which:

- identified Wells as the Chairman and Chief Executive Officer of RNR;

- described the business of RNR as the acquisition and development of "specialized mobile radio properties";

- recited the determination by Commission staff "that Respondents might have information relevant to the Investigation";

- represented that the subpoenas sought "testimony that will assist the Commission in determining whether there have been violations of the federal securities laws as described in the Formal Order," specifically, that the SEC needed the

---

1. This appeal was resolved by summary order entered on May 22, 1997. Because we conclude that publication is warranted, we issue this opinion which in substance restates and expands that order.

testimony of all three respondents in order to obtain information concerning RNR's 1995 offering of $5 million of unregistered securities to the public (the "Offering"); and

• reported that Wells had appeared and answered some of the SEC's initial questions, but stopped answering questions on the advice of counsel, and later refused to appear and testify.

Wells, Carlo and RNR opposed the motion on the grounds that the subpoenas violated their due process rights and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* Wells also filed a motion to compel discovery of materials that the SEC had not released under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Wells had previously made a FOIA request to the SEC for copies of "the administrative subpoenas issued to date, final judgments against defendants and orders issued pursuant to" the Formal Order. He was given access to public records of SEC administrative and civil proceedings, but was denied access to most nonpublic records.

After hearing the parties, the district court entered separate endorsement orders, dated September 17, 1996, granting enforcement, and denying the FOIA request. Wells appealed.

## I

■ Ten days before oral argument in this Court, the SEC filed a "Suggestion of Mootness," arguing that the appeal should be dismissed for lack of jurisdiction because Wells had already appeared before SEC staff and invoked his Fifth Amendment privilege against self-incrimination. In this section, we consider this threshold issue in light of the factors identified by this Court in *Browning–Ferris Industries of South Jersey, Inc. v. Muszynski,* 899 F.2d 151, 159 (2d Cir. 1990), and, having done so, we conclude that the interests of "judicial efficiency and restraint" justify our consideration of the merits. *Id.* at 157.

Although the normal rule is to decide jurisdiction before the merits, we think that assumption of jurisdiction here will not work

any injustice to the parties. *See id.* at 159. The jurisdictional issue may be classified as "difficult," *see id.* at 159, because: (i) this Court has not decided whether compliance with an order enforcing an administrative subpoena might render an appeal from that order moot notwithstanding the fact that the agency could use the information thus obtained in a future proceeding; (ii) the circuits that have considered the "future use" question are not unanimous, *compare Office of Thrift Supervision v. Dobbs,* 931 F.2d 956, 958–59 (D.C.Cir.1991), *with Gluck v. United States,* 771 F.2d 750, 754 (3d Cir.1985); *see also Church of Scientology v. United States,* 506 U.S. 9, 13 n. 6, 113 S.Ct. 447, 450 n. 6, 121 L.Ed.2d 313 (1992) (noting Court would "leave the 'future use' question for another day," since appeal was not moot on other grounds); and (iii) the issue is of "constitutional stature," *Browning–Ferris,* 899 F.2d at 159. Moreover, at oral argument the SEC rendered its mootness argument more dubious by reserving the right to recall Wells for further testimony. The jurisdictional issue is also "far-reaching," because it concerns an administrative agency and its investigative powers. *Id.* Moreover, the record is inadequate to resolve the jurisdictional issue: the issue was raised shortly before oral argument; the SEC's briefing is incomplete; and the *pro se* appellant has had insufficient opportunity to respond. Finally (as discussed below), the merits of this appeal clearly favor the SEC. *See id.* Accordingly, we assume jurisdiction *arguendo* and reach the merits of the appeal.

## II

■ "The courts' role in a proceeding to enforce an administrative subpoena is extremely limited." *In re McVane,* 44 F.3d 1127, 1135 (2d Cir.1995) (internal quotation marks omitted). To win judicial enforcement of an administrative subpoena, the SEC "must show [1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the Commissioner's possession, and [4] that the administrative steps required ... have been followed...." *Unit-*

*ed States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964); *see also SEC v. Brigadoon Scotch Distrib. Co.,* 480 F.2d 1047, 1053 (2d Cir.1973).

■ "[A] governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power." *United States v. Morton Salt Co.,* 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401 (1950) (quoted in *McVane,* 44 F.3d at 1135). However, "it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *Id.* The respondent opposing enforcement must shoulder the burden of showing that the subpoena is "unreasonabl[e]" or was issued in bad faith or for an "improper purpose," or that compliance would be *"unnecessarily* burdensome." *Brigadoon Scotch,* 480 F.2d at 1056.

■ Construing his arguments liberally, Wells challenges the legitimacy of the investigation, the relevance of his testimony to it, and the SEC's good faith, and asserts violations of due process and the APA. His claims are without merit.

The Formal Order indicates that it was issued because the SEC had information suggesting that securities laws had been violated in connection with the offering and sale of "Telecommunications Technology Securities." The Formal Order reflects a legitimate investigatory purpose. *See* 15 U.S.C. § 78u(a)(1) ("The Commission may, in its discretion, make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate any provision of this chapter, [or] the rules or regulations thereunder ...."); *see also United States v. Construction Prods. Research, Inc.,* 73 F.3d 464, 470–71 (2d Cir.) (discussing scope of federal agencies' administrative investigatory powers), *cert. denied,* —— U.S. ——, 117 S.Ct. 294, 136 L.Ed.2d 213 (1996).

■ Moreover, the information sought by the subpoena is relevant to that investigation. "We defer to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong," and review a district court's determination that the information sought is relevant under the clearly erroneous standard. *McVane,* 44 F.3d at 1135 (internal quotation marks and citation omitted). We measure the relevance of the sought-after information "against the general purposes of the agency's investigation, which necessarily presupposes an inquiry into the permissible range of investigation under the statute." *Id.* (internal quotation marks and citation omitted). "An affidavit from a governmental official is sufficient to establish a prima facie showing that these requirements have been met." *Id.* at 1136.

The Formal Order does not name Wells or RNR, but it does describe companies of a specific and discrete type—a category that includes RNR—and specifies as one reason for the investigation the possible offerings by such companies of unregistered securities. The SEC's allegations concerning RNR's Offering confirm that an inquiry into the Offering is within the scope of the Formal Order. Wells has not carried his burden of showing that the subpoena was unreasonable. *See id.* at 1135. Although Wells describes in a conclusory fashion the alleged improprieties by SEC personnel, he has altogether failed to demonstrate that the subpoena was sought in bad faith. *See SEC v. Knopfler,* 658 F.2d 25, 26 (2d Cir.1981) (per curiam); *Brigadoon Scotch,* 480 F.2d at 1056.

■ Wells contends that his due process rights were violated because the Formal Order (i) did not name RNR, (ii) predated the establishment of RNR and (iii) improperly "encompasses an entire industry." These arguments notwithstanding, the procedures followed by the SEC in Wells's case are authorized. The statute and regulations do not preclude an industry-wide administrative investigation of possible securities law violations where, as set forth in the Formal Order, information before the SEC shows that violations of federal securities laws may have occurred on an industry-wide basis.[2]

---

**2.** In September 1994, the SEC released an Inves- tor Alert warning potential investors of "the

*See* 15 U.S.C. §§ 77s(b), 78u(a); 17 C.F.R. § 202.5; *cf. FTC v. Carter,* 636 F.2d 781, 785–87 (D.C.Cir.1980) (finding FTC had authority to conduct industry-wide investigation of cigarette advertising and promotion). Nor do they require that the order authorizing the investigation target by name a specific company or person suspected of violating securities laws. "The SEC often undertakes investigations into suspicious securities transactions without any knowledge of which of the parties involved may have violated the law." *SEC v. Jerry T. O'Brien, Inc.,* 467 U.S. 735, 749, 104 S.Ct. 2720, 2728, 81 L.Ed.2d 615 (1984). Additionally, there is no requirement that the scope of the investigation be limited to companies that existed before the Formal Order was issued where (as here) the Formal Order expressly provided that the investigation would encompass persons who "are about to engage" in the alleged acts, and the Order remained in effect at the time the subpoenas were issued.

Moreover, "[d]ue process does not require notice, either actual or constructive, of an administrative investigation into possible violations of the securities laws." *Gold v. SEC,* 48 F.3d 987, 991 (7th Cir.1995). In prescribing what due process requires, the Supreme Court has distinguished between the investigative and adjudicative proceedings undertaken by an administrative agency:

> [W]hen governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used.

*Hannah v. Larche,* 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960).

As we have discussed, the investigation authorized by the Formal Order in this case is within the SEC's authority; the inquiry into possible securities violations related to the Offering falls within the scope of the Formal Order; the information sought by the subpoena served on Wells is relevant to the purpose of the investigation authorized by the Formal Order; and Wells has not shown that the subpoena was unreasonable or issued in bad faith. Neither the securities laws nor the Constitution impose a distinct requirement that, before issuing the subpoena, the SEC issue a Formal Order authorizing by name an investigation of RNR or Wells.

Wells's APA claim is unclear. Wells apparently contends that procedures for *adjudicative* proceedings should be employed in the context of this *administrative* investigation, but he fails to appreciate that (although the SEC may commence administrative enforcement proceedings) these diverse proceedings are governed by different procedures. *See* 17 C.F.R. § 202.5; *Gold,* 48 F.3d at 992.

 Finally, the district court properly denied Wells's FOIA motion because Wells failed to appeal the denial of his FOIA request to the head of the agency, even though the SEC decided Wells's request during the requisite time period and advised him of his right to appeal. *See* 5 U.S.C. § 552(a)(6)(A)(i), (C); *Ruotolo v. Department of Justice,* 53 F.3d 4, 8–9 (2d Cir.1995). Nor did the district court abuse its discretion in refusing to allow discovery. *See SEC v. Lavin,* 111 F.3d 921, 926 (D.C.Cir.1997). Wells argues that the materials he sought were needed in "defense of the subpoena enforcement case," but this subpoena serves investigative purposes, and is not an adversarial proceeding *against* Wells. In any event, it is unclear how Wells would have used the information. The denial of his request therefore was proper.

For the reasons set forth above, the judgment of the district court is affirmed.

---

prevalence of . . . telecommunications technology securities frauds," and noted that the Commission was investigating "fraudulent, unregistered sales of securities in ventures involved in . . . specialized mobile radio . . . and similar telecommunication technologies."